MELVIN D. WOODFORD, Plaintiff in Error, v. THE PEOPLE OF
    THE STATE OF NEW YORK, Defendants in Error.

A charge in an indictment for arson in the first degree that the accused
  set fire to or burned a dwelling-house, the property of, or belonging to, a
  person named, is a sufficient allegation of ownership; as under the statute
  defining the offence (2 R. S., 657, § 9), the possessor for the purposes
  thereof is the owner, and the legal presumption from such an allegation
  is, that the person named is in possession.
An indictment charging as a single act the burning of a number of desig-

nated dwelling-houses, charges but one offence, and is, therefore, not bad for duplicity.

The criminal act is kindling the fire with felonious intent to burn the houses specified, and is consummated when the burning is effected; and the facts that the houses did not burn at the same time, and that but one was set on fire, the fire communicating therefrom to the others, do not make the burning of each a separate offence.

*It seems,* that if the indictment charges as a distinct offence the burning of each house, it is subject to the objection of duplicity, and the defect is not cured by a withdrawal, upon the trial, of all claim to convict the prisoner for burning any house but one.

Where the indictment is fatally defective, it cannot be cured by amendment upon the trial.

An indictment for burning one house, is sustained by proof of the firing of another with the criminal intent of burning the house specified.

As to whether a felonious setting fire to one building, which actually communicates to and burns another, is sufficient to convict of arson in burning the latter, irrespective of an intent so to do, *quære.*

An indictment, after charging the setting fire to and burning of a number of dwelling-houses, designating them by stating the names of the owners, alleged that there were, "within the said dwelling-houses, some human being." It was objected that the allegation imported but one human being in all the houses, without specifying in which, and that, therefore, there was no sufficient averment as to any. *Held,* untenable; that the fair construction of the language was that there was a human being in each.

Also, *held,* that the offence was established by proof of the burning, by the prisoner, of one of the houses specified in which was a human being; that the allegations as to the other houses were not matters of description of the offence, but matters of aggravation which the prosecution was entitled to prove as defining the extent of the crime.

Upon the trial, after the summing up and before the charge, the prosecution withdrew all claim to convict, and all evidence except as to one house; no exception was taken. *Held,* that while, as a matter of propriety it should have been done before the summing up by the counsel for the prisoner, he was not legally prejudiced, and in the absence of an exception, it was not error.

If, at the time the dwelling-house takes fire, there is a human being therein, the provision of the statute to that effect is satisfied, although before that time the person had ample opportunity to leave the house. Whether the person is asleep or awake, or whether escape is practicable or not before the building actually takes fire, is not material.

Where confessions of the prisoner are given in evidence on the trial of an indictment, in the absence of proof of such threats or inducements as would render the confessions inadmissible, a refusal of the court to

charge, that if the jury believed from the evidence that the prisoner was induced to make the confessions under any inducements or hope of reward held out to him they should exclude the evidence, is not error.

(Argued April 28, 1875; decided May 25, 1875.)

Error to the General Term of the Supreme Court in the third judicial department, to review judgment affirming a judgment entered upon a verdict convicting plaintiff in error of arson in the first degree. (Reported below, 3 Hun, 310; 5 T. & C., 539.)

The plaintiff in error was indicted jointly with one Stone. The indictment contained two counts; the first count charged that the accused, on the 27th day of October, 1873, "at the town of Lenox, in the county of Madison, aforesaid, with force and arms in the night-time of the said day, certain dwelling-houses, the property of the several persons hereinafter named and set forth, to wit: One belonging to Eliza A. Perry, two belonging to Elizabeth Young, one belonging to Mary H. Parker, one belonging to John H. Johnson, one belonging to Matthew Worth, one belonging to Alvin Wells, one belonging to a Mrs. Fay, one belonging to Friend A. Andrews, one belonging to Mrs. John Montross, one belonging to Mrs. Delano, one belonging to David H. Rasbach, and others belonging to divers persons to the jurors unknown, in all about thirty-five dwelling-houses then and there situate (there being then and there within the said dwelling-houses some human being), feloniously, willfully and maliciously did set fire to," etc.

The second count charged that the accused, " on the day and in the year aforesaid, at the town of Lenox, in the county of Madison aforesaid, with force and arms in the night-time of the said day, certain dwelling-houses of divers persons and individuals and people to the jury unknown, and particularly a certain dwelling-house of Eliza A. Perry, one dwelling-house belonging to Mary H. Parker, one dwelling-house of David H. Rasbach and one dwelling-house of Carrie Bond, one dwelling-house known as the Beecher block, in Canastota, N. Y., then and there situate (there being then and there

within the said dwelling-houses some human being), feloni-
ously, willfully and maliciously did burn," etc.

At the commencement of the trial the prisoner's counsel
moved to quash the indictment for duplicity; the motion was
denied and said counsel excepted. He then requested the
court to direct the district attorney to confine himself to one
dwelling-house. The court stated that he must be confined
to the fire stated in the indictment, but declined to give
directions as to one dwelling-house. To this said counsel
excepted. The counsel then requested the court to require
the district attorney to elect under which count he would
proceed as two offences were charged. The court declined
and counsel excepted. He then objected to any evidence
under the indictment, on the ground of duplicity, insuffi-
ciency of statement and insufficiency of description of the
places burned, the owners, the number of buildings, and the
uncertain allegation of the human beings alleged to have
been in the dwelling-houses. The objections were overruled
and exceptions taken. The evidence tended to show that
the fire was set about midnight, when a furious wind was
blowing, in a small barn or shed adjoining a dwelling, and
spread from one dwelling to another until thirty-five in all
were consumed, among them the house of Mary H. Parker,
who testified, in substance, that she owned and occupied it as
a residence, and slept there the night of the fire; that it was
about two rods from the barn or shed set on fire; that she
heard the alarm; arose and commenced to dress herself;
before she could do so the house caught, and, in about five
minutes, she was driven out by the flames; that when she
left the roof had fallen in and the flames burst from the
chamber door.

After the defendant's counsel had closed his argument to
the jury, the district attorney said he withdrew any evidence
or claim tending to convict the prisoner for setting fire to or
burning any other dwelling-house except that of Mary H.
Parker, and that he withdrew all evidence except so far as it
bore directly upon the firing and burning of her dwelling.

Defendant's counsel stated he could not do it at that stage of the case.

Evidence was given on the trial of various declarations and admissions of the prisoner.

The court charged, among other things, that " the defendant would be presumed to intend what he could see would be the necessary consequence of his own act. If he could see and understand that in kindling a fire in the Bond barn or shed that night, that it must necessarily kindle the house of Mrs. Mary H. Parker, why, then he is presumed to intend to do that very thing."

That there must have been, at the time of the fire, some human beings in the house; that according to Mrs. Parker's evidence she was in there when the fire kindled to her house, and if that were true, it came within the language of the statute.

Defendant's counsel requested the court to charge " that the prisoner cannot be convicted of arson in the first degree, under this indictment, in burning the dwelling-house of Mrs. Mary H. Parker, as it is not alleged that there was any person in it at the time of the burning."

Also, to charge " that the prisoner cannot be convicted of arson in the first degree, under this indictment, in case the persons occupying the buildings voluntarily remained in them after having a sufficient notice of the spreading of the flames from other buildings."

The court declined to charge differently from what he had on these subjects, and defendant's counsel excepted.

Said counsel also requested the court to charge " that if the jury believe, from the evidence, that the prisoner was induced to make the confessions under any inducements or hope of reward held out to him, the jury are to exclude such confessions in considering the guilt or innocence of the prisoner." The court stated that it found no evidence warranting the submission of that question to the jury. Defendant's counsel excepted.

Further facts appear in the opinion.

*Lyman & James* for the plaintiff in error. The indictment was defective in not alleging the houses burned to be the dwelling-houses of any person. (3 R. S. [5th ed.], 936; Mathew's Cr. Law, 466; Train & Heard Preced., 32; Bishop's Cr. Proc., 32; 3 Chit. Cr. Law, 1128; 2 Archbolds, 485, orig. pag. [7th ed., 710].) It is error to allege the title of the house in the real owner, if it is in possession of a tenant. (*Ritchey* v. *State*, 7 Black., 168; 1 Bish. Cr. Proc., § 321; 3 Chit. Cr. Law, 365; *People* v. *Gates*, 15 Wend., 159; *People* v. *Slater*, 5 Hill, 402; *Shepard* v. *People*, 19 N. Y., 537.) Both counts of the indictment charged two or more distinct offences, and are, therefore, bad for duplicity. (*People* v. *Wright*, 9 Wend., 193; *People* v. *Taylor*, 3 Den., 98; *Read* v. *People*, 1 Park. Cr., 481; *U. S.* v. *Sharp*, 1 Pet., 131; *State* v. *Nelson*, 8 N. H., 163; 3 T. R., 103, 435; *State* v. *Lot*, 1 Richard., 260; Starkie's C. P., 272; *Com.* v. *Gable*, 7 S. & R., 423; *Long* v. *State*, 12 Geo., 293; *Miller* v. *State*, 5 How. [Miss.], 250; *Fisher* v. *State*, 33 Tex., 792; 4 Mod., 103; *State* v. *Temple*, 38 Vt., 37; *State* v. *Cherry*, 1 Swan [Tenn.], 160; *Campbell* v. *Queen*, 11 Ad. & El. [N. S.], 800; Whart. Cr. Law, § 391; *Reg.* v. *Truman*, 8 C. & P., 727; 1 Arch. Cr. Proc. [7th ed.], 313; 1 Bish. Cr. Proc., § 189; *State* v. *Burges*, 24 Mo., 353; *Com.* v. *Symons*, 2 Mass., 163.) Two distinct offences requiring different punishments, cannot be charged in the same count of an indictment. (1 Park., 481; 1 Pet., 130, 131; 8 N. H., 163; 9 Wend., 196; *State* v. *Wise*, 66 N. C., 120; 1 Chit. Cr. Law, 254.) Such an error will not be aided by a verdict or cured by the statute of jeofails. (9 Wend., 196; 1 Rich., 260; *Greenlaw* v. *State*, 4 Humph., 25; *State* v. *Faut*, 2 Brev. [S. C.], 487; *Dawson* v. *People*, 25 N. Y., 399; *Com.* v. *Symons*, 2 Mass., 163.) Nothing can be taken by intendment in an indictment. (*State* v. *Gray*, 3 Stew., 124; 1 Chit. Cr. Law, 169; 1 Arch. Cr. Proc., note 1, p. 85, orig. pag. [7th ed., p. 283]; *Com.* v. *Waters*, 7 Dana, 29; *State* v. *Philbrick* 31 Me., 401; *Lambert* v. *People*, 9 Cow., 578.) The indictment was void for uncertainty. (1 Chit.

Cr. Law, 169; 1 Arch. Cr. Proc., 282 [orig. pag., 85]; 1 Whart., Cr. Law, §§.258, 295; 1 Arch., 265, 269, note 1, p. 270 [orig. pag., 79, 81]; Holt C., N. P., 595; 2 Russ. on Cr., 1313; 3 Cowp., 264, 265.) The people having charged the burning of different houses in the indictment, must show the burning of all as alleged. (*U. S.* v. *Keene*, 1 McL., 441; 1 Arch. Cr. Proc., 297 [orig. pag., 90, note 1]; *Dedieu* v. *People*, 22 N. Y., 181; *Com.* v. *Atwood*, 11 Mass., 93; *State* v. *Temple*, 38 Vt., 37; *Com.* v. *Morse*, 2 Mass., 130; *Com.* v. *Hersey*, 1 id., 137; *Com.* v. *Tucker*, 20 Pick., 361; 1 Bish. Cr. Law, § 406; *Crichton* v. *People*, 6 Park., 367; *People* v. *Jackson*, 3 Den., 101; *Dedieu* v. *People*, 22 N. Y., 178.) The court erred in receiving evidence of the several crimes charged. (*Russ* v. *Ackerman*, 46 N. Y., 210; *Com.* v. *Call*, 21 Pick., 522; *Diffe* v. *People*, 4 Park., 199; affirmed, 6 id., 28.) The court erred in receiving evidence as to the firing of .all the buildings charged in the indictment, and then, at the close of the evidence, allowing the district attorney to withdraw any evidence tending to convict the prisoner, except as to one of them. (*Anderson* v. *R., W. and O. R. R. Co.*, 54 N. Y., 34; *Baird* v. *Gillett*, 47 id., 186; *Starin* v. *People*, 45 id., 341; *Rosewig* v. *People*, 63 Barb., 365; *People* v. *Haynes*, 38 How., 369; *People* v. *Pierpont*, 1 Wheel. Cas., 139, 181; 6 City Hall Rec., 96; 1 Greenl. on Ev., §§ 51, 52, 448; 1 Den., 574; 16 J. R., 89; *Hall* v. *People*, 6 Park., 671; *Chester* v. *Dickson*, 52 Barb., 365; *People* v. *Parish*, 4 Den., 153; *Myres* v. *Malcolm*, 6 Hill, 296.) The burning of Mary H. Parker's house did not constitute the crime of arson within the language or spirit of the statute. (2 R. S. [Edm. ed.], § 9, p. 678; *Com.* v. *Buzzel*, 16 Pick., 153; *Reg.* v. *Fletcher*, 2 C. & K., 215; *Pennally* v. *People*, 3 Park., 59; Roscoe Cr. Ev., 269; *State* v. *Stewart*, 6 Conn., 47; *Rex* v. *Houghton*, 5 C. & P., 555; *Reg.* v. *Paice*, 1 C. & K., 73.) The statute is penal and must be strictly and literally construed. (4 Bl. Com., 225; 3 Chit. Cr. Law [5th ed.], 1129.) Confessions made under any threat, promise or encouragement of any hope or favor are inad-

missible in criminal prosecutions. (*State* v. *Phelps*, 11 Vt., 116; *Boyde* v. *State*, 2 Humph., 37; *State* v. *Grant*, 9 Shep., 171; *State* v. *Harman*, 3 Harr., 567; *State* v. *Freeman*, 1 Speers, 57; *Ward* v. *People*, 3 Hill, 395; *Com.* v. *Knapp*, 9 Pick., 496; *Stephens* v. *State*, 11 Geo., 225; *Warrickshall's Case*, 1 Leach Cr. Cas., 299; *Knapp's Case*, 10 Pick., 489, 490; *Chabbock's Case*, 1 Mass., 144.)

*G. A. Forbes*, district attorney, for the defendants in error. The motion to quash the indictment was addressed to the discretion of the court, and was not the subject of exception. (1 Arch. Cr. Pr., § 102; 1 Colby Cr. Law, 266, 267; *People* v. *Peckford*, 7 Cow., 535; 8 N. Y. S. C., 381; *People* v. *Strong*, 1 Abb. Pr. [N. S.], 244; *People* v. *Walters*, 5 Park. Cr., 664; Whart. Cr. Law, §§ 519, 520, 524.) The court properly refused to confine the district attorney to proof of the burning of one dwelling-house. (1 Colby Cr. Law, 362, 443; *People* v. *Baker*, 3 Hill, 159; *Nelson* v. *People*, 5 Park. Cr., 39; *People* v. *Austin*, 1 id., 154; *People* v. *Costello*, 1 Den., 83; *People* v. *White*, 55 Barb., 606; 4 Park. Cr., 396; 1 Den., 535; 23 How. Pr., 350; 17 Abb. Pr., 19; 14 id., 346; 2 Hill, 205; 3 id., 214.) The indictment was not double, uncertain or insufficient in form or substance. (2 Colby Cr. Law, 118, 120, 121, 122, 123; 22 Ala., 9; 1 Park. Cr., 481; 1 Bish. Cr. Pro., 189, 194; 25 N. Y., 399; 1 id., 379; 1 Arch. Cr. Pro., 314; 6 Park. Cr., 363; 1 Hun, 385; *Dedieu* v. *People*, 4 Park. Cr., 593; 1 id., 424; 3 id., 208; 5 id., 134; 38 How. Pr., 369; 54 Barb., 306, 367; 24 N. Y., 100; 2 Whart. Cr. Law, § 2260, p. 391.) The court will not overthrow a conviction or quash an indictment upon grounds purely technical, where, upon the evidence, the court can see that the prisoner was not injured, and could not escape conviction upon a new trial. (55 Barb., 606; 65 id., 48; 3 N. Y. S. C., 796; 2 N. Y., 193; 35 id., 49; 49 id., 137; 1 Colby Cr. Law, 267, 268.) The point taken on the trial, that a conviction would not bar another trial for another firing done at the same time, was not well founded. (1 Arch. Cr.

Pl., 97; Whart. Cr. Law., §§ 434, 435; *People* v. *White,* 55 Barb., 606; *People* v. *Smith,* 57 id., 46; *People* v. *Graves,* 5 Park. Cr., 134; 1 N. Y., 379; 15 Wend., 159; 3 How. Pr., 226; 2 J. R., 105; 4 Park. Cr., 206; 19 N. Y., 537; 45 id., 153.) The prisoner was properly convicted of arson in the first degree in setting fire to Mary H. Parker's dwelling-house. (1 Park. Cr., 252; 1 Colby Cr. Law, 490, 491; 2 id., 120; 2 Russ. on Crimes, 550; 1 Bish. Cr. Law, §§ 414, 665, 666; *People* v. *Hennessy,* 21 How. Pr., 239; Roscoe's Cr. Ev., 271, 272; 4 Park. Cr., 212, 535; 1 id., 560, 561; 16 J. R., 204; 33 How. Pr., 193; 47 Barb., 434; 39 id., 55.) The declarations of the prisoner to Spencer were competent. (4 Park. Cr., 396; 48 Barb., 274; 57 id., 354; *People* v. *Wentz,* 37 N. Y., 303; 2 Eng. R. [Moak's ed.], 206.) The declarations of Stone to Snyder were admissible. (39 N. Y., 39; 55 id., 565; 2 N. Y. S. C., 157.) A motion in arrest of judgment must be confined to the record as it then stands. (1 Colby Cr. Law, 386, 487; 2 Stat. at Large, 678, § 9; 1 Wend., 296; 17 Abb. Pr., 19; 14 id., 346; 23 How. Pr., 350; 4 Park. Cr., 396.)

CHURCH, Ch. J. The questions presented relating to the sufficiency of the indictment were properly regarded upon the argument as the most material and important. They were presented in various stages of the trial and upon a motion in arrest of judgment. The indictment contains two counts, and it may be conceded is not drawn with that legal precision and exactness which is desirable in criminal pleadings, but if a fair and reasonable construction will save it from objection of fatal defectiveness and if the prisoner has not been legally prejudiced, it is the duty of the court to sustain the conviction.

The first count charges that the plaintiff in error and another on the 27th of October, 1873, in the night-time with force and arms, etc., "certain dwelling-houses the *property* of the persons hereinafter named and set forth, to wit, one belonging to Eliza A. Perry," and specifying several other

houses in the same way among others "one belonging to
Mary H. Parker" * * * "and others belonging to
divers persons to the jurors unknown in all about thirty-five
dwelling-houses then and there situate (there being then and
there within the said dwelling-houses some human being)
feloniously, etc., did set fire to," etc.

The second count charges that said persons on the same
day and place did feloniously, etc., *burn* five specified dwell-
ing-houses including "one dwelling-house *belonging* to Mary
H. Parker" * * * "there being then and there within
the said dwelling-houses some human being," etc.

The first objection is, that the indictment does not properly
charge that the houses were the dwelling-houses of any par-
ticular person or persons and we are referred to precedents
showing that the forms are "a certain dwelling-house of A.
B." or "a certain dwelling-house in the possession of A. B."
It is necessary to specify the owner of the dwelling-house,
but whether this is done by stating it as the house of, or as
the property of, or as owned by or belonging to A. B. or as
a house in the possession of A. B. it is sufficient for the pur-
poses of alleging ownership of a dwelling-house in an indict-
ment for arson. Either allegation implies that the person
named actually dwells in the house, and the statute provides
that every house which shall have been usually occupied by
persons lodging therein at night, shall be deemed a dwelling-
house of any person so lodging therein. A person in pos-
session of a dwelling-house is the owner under this statute,
and it may be so laid in the indictment. It is not good to
lay the house in the owner in fee if it is in possession of
another, and the counsel argued that the allegation that the
house was the property of or belonged to one person implied
that it was in possession of another. I think the contrary pre-
sumption arises and that upon an allegation of ownership of
a dwelling-house in an indictment for arson, the legal pre-
sumption is that the person named is in the possession
of it because the possessor is the owner for this purpose. If
it turns out in proof that the person named is not in possession

although he may be the owner in fee, a conviction cannot be had, but an indictment is good in this respect which alleges the ownership in any of the forms above specified. This is the result of the authorities. (15 Wend., 158; 2 J. R., 105; Whar. Crim. Law, §§ 1668 to 1672; 2 Bish. Crim. Pro.; § 53; and cases cited, 2 Bish. Crim. Law, § 39.)

It is also urged with considerable force, that the indictment is bad for duplicity in charging two or more offences in each count. It has been held in this State that when two offences requiring different punishments are joined in the same count the objection may be taken advantage of by motion in arrest of judgment. (9 Wend., 193.) If these counts are to be regarded as charging a distinct offence for burning each house I do not see how the withdrawal of all claim to convict the prisoner for burning any house but that of Mary H. Parker would aid the prosecution in answering the objection to the indictment. If that is fatally defective it could not be cured by amendment on the trial. I have examined the question with considerable care and have arrived at the conclusion that each count charges only a single offence. It charges the burning of a number of houses by a single act, at one time and place. This is I think the proper legal construction of the pleading. For aught that appears in the indictment these houses were all in a block or row, and all connected together, and if not that they were so situated that the firing of one would naturally if not necessarily burn and destroy the others, or at all events that the fire was communicated to all from a single setting. They are charged to have been burned by a single act of firing and burning. A conviction upon separate indictments could not be had for each separate house, although an indictment may have been good for any one, and a conviction or acquittal upon such an indictment would be a bar to an indictment for burning any other house burned by the same act. These consequences must follow from the position that there was but one crime committed in respect to all the dwelling-houses, and that the respective counts charge but one crime. It is a general rule that no matters however

multifarious will operate to make a declaration, information or indictment double, provided that all taken together constitute but one connected charge or one transaction. (20 Conn., 232; *Rowles* v. *Lusty*, 4 Bing., 428.)

The same principle applies where the evidence fails to prove the extent or magnitude of the charge as alleged in the indictment provided a specific crime alleged is established. (Whar., §§ 391, 624.) The stealing of various articles at the same time and place is but one offence, and this is so even though the articles belong to different persons. An indictment for stealing three negroes was sustained upon proof that one was stolen. (Id., and cases cited.) It is urged that this rule is not applicable because the houses did not in fact burn at the same time, and did not of course occupy the same spot. The answer is that it was one transaction. The criminal act was in kindling the fire with the felonious intent to burn the dwelling-houses specified, and was fully consummated when the burning was effected. The fire was not set in any one of the houses specified, but the charge is that the fire was kindled in the shed for the purpose of burning the houses, and there can be no question that an indictment for burning one house will be sustained by proof of the firing of another with the criminal intent of burning the house specified. Otherwise, a criminal liability for a higher offence could be avoided in most cases. The several houses could not burn at the same instant, nor could they occupy precisely the same place, but the criminal act was single, and the consequences ensued according to the nature of the act.

The case of *Regina* v. *Trueman* (8 Car. & P., 727), recognizes this principle. That was an indictment of five counts for arson, charging the burning of five houses belonging to different persons. It was stated in the opening that the houses were in a row of adjoining houses, and upon application to compel the prosecutor to elect, Erskine, J., said: "As it is all one transaction we must hear the evidence. * * * I shall take care that as the case proceeds the prisoner is not tried for more than one. felony." The fact that the houses

were not burned at the same instant, and that but one was set fire to, were not regarded sufficient to constitute the burning of each a separate offence. The circumstance that there were five counts does not impair the authority. According to the view of the court, all could more properly have been included in a single count. An indictment, charging burglary with intent to commit larceny, and also charging larceny, is not bad for duplicity. (20 Pick., 356 ; 2 Colby Cr. Law, § 6.) So, after breach and entry with intent to set fire to the building (10 Metc., 422), and uniting with a charge of burglary with an intent to steal the property of one person, a charge of stealing the property of another, was held not double. (14 Ver., 353.) So, the various offences under the statute of counterfeiting, as forgery, causing to be forged, and assisting or aiding, may be charged in one count. (Whar. Crim. Law, § 390.) An indictment charging the prisoner with having *destroyed*, *defaced* and *injured* a parish register, was held good, as it related to one transaction. (1 Car. & K. [N. P.], 501.)

An indictment for robbery, charging the prisoners with assaulting G. P. and H. P., and stealing from one 2s. and from the other 1s., is good, if the robbing was all one act. (*R.* v. *Gibbon et al.*, 1 Car. & M., 634.)

If a person shoots three persons by a single shot, with the necessary criminal intent, a single count for the murder of the three would, I apprehend, be good, although they may not all have died at the same time, and proof that one only was killed would sustain the indictment.

In *Rex* v. *Benfield* (2 Burr., 980), the court refused to arrest the judgment upon an indictment for a libel upon two persons. It was in that case that Lord Mansfield, in overruling the case of the *King* v. *Clendon* (2 Ld. Ray., 1572), which arrested judgment for duplicity in the indictment in charging an assault upon two persons, used the expression, "cannot the king call a man to account for a breach of the peace, because he broke two heads instead of one?" This remark is said to have originated the idea that several distinct misde-

meanors might be united in one indictment, although the expression only justified an indictment for all the consequences of a single act, and to that extent it is a significant authority.

It follows, that two or more persons may be assaulted or killed by a single act, or two or more buildings burned by a single act, and in such cases it seems clear that the offence may be regarded as single. This accords with reason, and the rule can work no injustice to the party accused. He is only tried for a single offence, a single act. If that act is theft, and embraces a variety of articles belonging to different persons, or if assault or other crime upon several, or arson for burning by a single fire numerous buildings, there is but one offence, and he cannot justly complain because the defence may be somewhat burdened by the extent of the consequences which his act has produced. I am, therefore, of opinion, that the indictment is not bad for duplicity.

It is objected that each count is defective in charging arson in the first degree, because it is not alleged that there was a human being in each house, and also that the allegation imports but one human being in all the houses without specifying in which; and, therefore, that there is no sufficient averment as to any. If the construction claimed is the correct one, the objection is fatal, because it is indispensable to allege and prove that there was a human being in the house at the time it was burned. I have quoted the language in both counts. It is quite general, but it may be properly construed as an averment that there was in the *several* houses or in the *respective* houses a human being. While it might have been more explicit, this is the fair meaning which any one reading it would give.

It would be awkward and very unnatural to allege that there was only one human being in thirty-five dwelling-houses. Considerable strictness is required in criminal pleading, but a strained or technical construction should never be resorted to, to defeat the reasonable import of the language, especially when the prisoner has not been prejudiced. This

construction of the pleading is an answer also to the objection of uncertainty, and also the objection that all the allegations specifying the various houses, with a human being in each, are matters of description of the offence and must be proved. It follows from the views expressed that they are matters of aggravation. The offence is complete under the allegation as to either house. Nothing more was necessary to charge the crime of arson in the first degree, and the other matters define the extent of the crime. The prosecution was entitled to prove the extent of the crime, showing that all the houses were burned by the act of the defendant, and that there was a human being in each, and if he proved one it was sufficient. This course was pursued, but before the charge of the judge all claim to convict on any charge except as to the house of Mary H. Parker, and all evidence relating to any other, was withdrawn, and the case was submitted as to Mrs. Parker's house alone. This is complained of, and as a matter of propriety it should have been done before the summing up by defendant's counsel, but I am unable to see how the defendant could have been legally prejudiced, and there was no exception taken to it. The evidence which had been given respecting the other houses was proper, and its withdrawal therefore, in theory at least, abstracted so much from the strength of the case against the defendant.

It is claimed that a case of arson in the first degree was not established as to the house of Mrs. Parker, upon the ground that she had ample warning and opportunity to leave the house before it took fire. She testified that she was awakened by the alarm, and before she could dress herself the house caught, and in five minutes she was driven out by the flames, and the falling in of the roof, and that she was in the house when the fire caught. The judge charged that if they found this to be true, it was sufficient, and I think he was right. The statute defines arson in the first degree to be the setting fire to or burning a dwelling-house in the nighttime, "in which there shall be at the time some human

being." (2 R. S., 657.) Whether the person is asleep or awake, in bed or out, or whether escape is practicable before the building actually kindles, is not made material by the terms of the statute. A human being must be in the building at the time it takes fire, and if this fact exists it is sufficient. (61 E. C. L. R., 215; 16 Pick., 153.)

The exception to the refusal to charge that if the jury believed, from the evidence, that the prisoner was induced to make the confessions under any inducements or hope of reward held out to him, they should exclude the confessions, is not tenable. The court had charged that confessions must be received with great caution, but there were no such threats or inducements proved as to render the confessions inadmissible as evidence, nor sufficient to call for the charge requested. The circumstances attending the confessions, and the manner of obtaining them, were very proper for the consideration of the jury upon the credibility of the witness who testified to them, as well as to the reliability of the confessions themselves. If the case of the prosecution rested entirely upon the confessions, the jury might well have hesitated in believing that the prisoner, in confessing his guilt, stated the exact truth, especially in view of his condition at the time, and his manipulation by Stone, his accomplice in the crime, but there were other facts proved which tended to corroborate the truth of the confession, and to establish the guilt of the prisoner. The charge of the court, as to the intent to burn Mrs. Parker's house, was quite as favorable to the prisoner as the law would justify. The charge in substance required the jury to find that the burning of the shed must necessarily kindle and burn the house of Mrs. Parker, in order to convict the prisoner of a criminal intent to burn the house. There is authority for holding a felonious setting fire to one building which actually communicates to and burns another, sufficient to convict the person of arson in burning the latter, irrespective of an intent to do so. (Col. Crim. Law, 490; *Hennesey* v. *People*, 21 How. Pr., 239; 5. Car. & P., 535.)

There is no injustice in holding a person responsible for all the consequences of his guilty act, although they may be more extensive than he intended, but it is unnecessary to define the extent of responsibility, as the charge of the court was more favorable to the prisoner in this respect, and he cannot complain.

After a careful examination of the case, we are unable to find any substantial legal ground for reversing the judgment, and it must therefore be affirmed.

All concur.

Judgment affirmed.