## HOUSTON DUMAS v. STATE.

No. A-3663. Opinion Filed June 18, 1921.
Rehearing Denied Sept. 12, 1921.
(201 Pac. 820.)

(Syllabus.)

1. **Indictment and Information—Arson—Charging Burning of Several Buildings as One Offense is not Duplicitous.** An information charging as a single act the burning of a number of designated buildings charges but one offense, and is not bad for duplicity.

2. **Appeal and Error—Burden to Establish Error and Resulting Prejudice.** On appeal the burden is upon defendant to establish both error and prejudice resulting therefrom.

3. **Same—Harmless Error—Overruling Challenge to Venire Summoned by Sheriff, a Witness but not Testifying.** Where the appellant interposed in the trial court a challenge to a special venire of talesmen on the ground that they were summoned by the sheriff, and that said sheriff's name was endorsed on the information as a witness against defendant, and there is no showing in the record that the sheriff was a material witness against defendant, and, on the contrary, it appears that the sheriff was not produced and did not testify as a witness against defendant, it cannot be said that the trial court, in the absence of such a showing, committed error prejudicial to defendant in overruling the challenge.

4. **Evidence—Use by State of Codefendant Proper Without Dismissal.** Where two or more persons are jointly informed against, the state may use one of such defendants, either before or after conviction, as a witness against the others, without first dismissing the prosecution against the defendant so used as a witness.

5. **Same—Privilege Against Self-Incrimination—Testimony by Codefendant Presumed Voluntary.** Sections 5879 and 5880, Rev. Laws 1910, relate to the dismissal of a prosecution against one defendant in order that he may be compelled to be a witness against the other, but such sections must be construed in connection with section 27, art. 2, Const., requiring any person having knowledge or possession of facts that tend to establish the guilt of any other person or corporation charged with an offense against the laws of the state to give testimony or produce evidence when legally called upon to do so, although the same may tend to incriminate him, but relieving such person from subsequent prosecution or penalty or forfeiture on account of so testifying or producing evidence. It is the privilege of a codefendant to testify voluntarily against the other defendant on a separate trial, and where such codefendant claims no privilege against self-incrimination, the presumption will be entertained in this court that he testifies voluntarily.

6.      **Evidence—Evidence of Other Crime to Show Motive.** It is a general rule in criminal prosecutions that evidence of any offense other than that for which the prosecution is had is inadmissible.     To this rule there are exceptions, and one of them is that evidence which tends to show motive or intent may be given against a defendant, although its introduction may involve defendant in the commission of other offenses.

7.      **Appeal and Error—Necessity for Record to Support Assigned. Error.** Assignment of error not supported by the record will not be considered on appeal.

8.      **Evidence—Sufficiency to Corroborate Accomplice.** Evidence examined, and held to be sufficient to corroborate an accomplice.

Appeal from District Court, Choctaw County; A. A. McDonald, Judge.

Houston Dumas was convicted of arson in the second degree, and he appeals.     Affirmed.

Plaintiff in error, Houston Dumas, hereinafter referred to as defendant, was charged jointly with one J. D. Moore, by information filed in the district court of Choctaw county, with the crime of arson, and upon a separate trial was convicted of second degree arson and sentenced to serve a term of five years' imprisonment in the penitentiary.     Briefly stated, the material evidence is, in substance, as follows:

Defendant lived in the town of Soper, Choctaw county, and in the spring or summer of 1917 he became the agent of the Madill Grain & Elevator Company, in that town, for the purpose of buying grain and feed of different kinds and shipping same to said company to the city of Madill, in Marshall county.     Arrangement was made between defendant and an agent of the grain and elevator company to transact the local business at Soper through the First National Bank of that city, and it appears from the evidence that the plan of operation was to draw drafts on said company through said bank for the grain, cotton seed, and other products that were purchased by defendant for the company at the town of Soper.     A warehouse  was provided for the use of defendant in storing the grain and other feedstuffs until cars could be obtained to

transport the same; the said warehouse being a frame building located on lot No. 4 in block 21 in the town of Soper, and owned by one Dick Crowder.

The testimony shows that defendant, through connivance with other persons, drew, shortly before the alleged commission of this offense, approximately $200 from the Madill Grain & Elevator Company for materials that had never been purchased by him for said company. Also there is some evidence to the effect that parties were permitted to take corn from the warehouse in Soper after the same had been purchased by the grain and elevator company and paid for without the knowledge and consent of said company, and without any authority from it.

According to the records kept by the Madill Grain & Elevator Company for money paid for corn and cotton seed presumed to have been purchased by defendant, there should have been about 686 bushels of corn in the warehouse and about 25 tons of cotton seed at the time of this alleged offense, while the evidence discloses that there was approximately in the neighborhood of only 150 to 175 bushels of corn and about from 5 to 8 tons of cotton seed in the warehouse at that time. The day before the fire, defendant, in a telephone conversation with the manager of the grain and elevator company at Madill, told said manager that he would ship the corn and cotton seed on hand immediately; and there is some evidence to the effect that men had been employed a day or two before this fire to separate the corn from the cotton seed in the warehouse. However, before the fire none of this grain or foodstuffs was shipped to the grain and elevator company.

The fire took place about 1 o'clock a. m. on the morning of February 15, 1918, and the witness J. D. Moore, who was jointly informed against with defendant but who had demanded a severance of trial, testified in behalf of the state

that he and defendant, with whom he was living at the time, took a can of coal oil over to the warehouse and set fire to the same. A high wind was blowing in the direction of other buildings in the town, which resulted in the communication of the fire to several buildings nearby and a destruction of property to the extent of approximately $150,000.

The defense interposed was an alibi, and in support thereof defendant introduced as his sole witness his wife, who testified that defendant came home that night from town about 11 o'clock and went to bed with her, and that he was asleep in bed at the time she heard the fire alarm; that their house was located about a block and a half distant from the warehouse. Defendant did not take the witness stand in his own behalf, in no way denying the positive testimony of Moore to the effect that they had set fire to the building, and in no way denying the testimony of other witnesses to the effect that defendant and they had drawn fictitious drafts against the grain and elevator company for foodstuff which had not been sold to defendant.

Jordon & Burke, for plaintiff in error.

S. P. Freeling, Atty. Gen., and E. L. Fulton and W. C. Hall, Asst. Attys. Gen., for the State.

MATSON, J. (after stating the facts as above). It is first contended that the trial court erred in overruling the demurrer to the amended information. In the brief and also orally counsel advanced the argument that the information is duplicitous.

The charging part of the information is as follows:
"That Houston Dumas and J. D. Moore did, in Choctaw county, state of Oklahoma, on or about the 15th day of February, 1918, and anterior to the presentment hereof, commit the crime of arson, in the manner and form as follows, to wit: Then and there, in Choctaw county, state of Oklahoma, in the

town of Soper, in said county and state, the said defendant, Houston Dumas, on or about February 15, 1918, was using a house of wooden structure, then the property of and owned by one Dick Crowder, situated on lot No. 4 in block 21 in said town of Soper, for storing, and then and there had stored therein, corn and also cotton seed, for and then and there the property of the Madill Grain & Elevator Company; that lot No. 6 is near and lies south of said lot No. 4, said lot being situated in block No. 21; that a wooden house was situated on said lot No. 6 at said time, a portion of which house had been, was then and there occupied by one J. S. Fry and members of his family as a lodging and sleeping place in the nighttime; that lot No. 7 in said block No. 21 is situated, adjoining, and south of said lot No. 6; that on said date there was a two-story wooden house on said lot No. 7, the upper story of which house had been and was then and there occupied by one Bun Henderson and members of his family, in the nighttime, as a lodging and sleeping place; lot No. 8 in said block No. 21 is adjoining, and lies south of said lot No. 7; that on said date there was a house on said lot No. 8 in which one Mc-Worter was then and there doing a merchandise business; that lot No. 9 in said block No. 21 is adjoining and lies south of said lot No. 8; that on said date a house was situated on said lot No. 9 in which A. A. Ferguson & Co., was then and there doing a merchandise business; that lot No. 10 is adjoining and lies south of said lot No. 9; that on said date there was a house on said lot No. 10 in which the Soper Trading Company was then and there doing a merchandise business; that lots Nos. 11 and 12 in said block No. 21 lie south of said lot No. 10, and said lot No. 11 adjoins said lot No. 10; that on said date there was a house on said lots Nos. 11 and 12 in which Failes Bros. were then and there doing a merchandise business; that on said date of February 15, 1918, or about said date, each and all of said houses herein described were situated so close together and so near each other that the burning of any one or either of said houses, so described herein, would manifestly endanger each and every other house herein described; that on or about the said date of February 15, 1918, in the nighttime, when a strong wind was blowing from the northeast, and said houses being so situated as above de-

19—C. R. 14

scribed, and each and all of said houses then and there being used in the manner and for the purposes herein set forth, and then and there occupied as a lodging and sleeping place, as described, and by the persons named as above set forth, the said defendants, Houston Dumas and J. D. Moore, acting together, did unlawfully, willfully, maliciously and feloniously then and there set fire to and burn said house on said lot No. 4, from which burning house fire was then and there communicated from said burning house on said lot No. 4, to each and all of said houses as above described, and each and all of said houses above described to which fire was so communicated, from said burning house on said lot No. 4 were burned and destroyed by said fire, it then and there being the willful, unlawful, malicious and felonious intention of said defendants that said fire from said house on said lot No. 4 be so communicated to each and every other building described and said buildings thereby burned and destroyed; that said defendants then and there set fire to and burned said house or building on said lot No. 4 in said block No. 21 in the town of Soper, Okla., with unlawful, felonious and malicious intent then and there to destroy said house or building and the said contents therein contained and each and every other house or building herein described, by and through said fire being so communicated from said burning house on said lot No. 4 to each and all of said buildings herein described.''

The particular statutes involved are as follows:

Section 2598, Revised Laws 1910, defines arson:

''Arson is the willful and malicious burning of a building, with intent to destroy it.''

Section 2600, Id., provides:

''Any building is deemed an 'inhabited building,' within the meaning of this article, any part of which has usually been occupied by any person lodging therein at night.''

Section 2601, Id., provides:

''The word 'nighttime,' in this article, includes the period between sunset and sunrise.''

Section 2607, Id., provides:

"Where any appurtenance to any building is so situated with reference to such building, or where any building is so situated with reference to another building, that the burning. of one will manifestly endanger the other, a burning of the one is deemed the burning of the other, within the foregoing definition of arson, and as against any person actually participating in the original setting fire, as of the moment when the fire from the one shall communicate to and burn the other."

Section 2608, Id., divides arson into two degrees and is as follows:

"Arson is divided in two degrees. Arson in the first degree is: First, maliciously burning in the nighttime an inhabited building in which there is at the time some human being; or, second, maliciously burning in the nighttime a structure adjoining to or within the curtilage of an inhabited building in which there is at the time some human being, and in such a way that such inhabited building is endangered; or, third, maliciously burning in the daytime any inhabited building or structure in which merchandising is carried on; or, fourth, maliciously burning in the nighttime any uninhabited building in which merchandising is carried on, or in which there is at the time any cattle, horses, hogs or sheep.

"Arson committed in any other way is arson in the second degree."

In drawing the foregoing information, the pleader evidently intended to allege facts sufficient to charge the offense as defined by sections 2598 and 2607, supra. An analysis of these statutes convinces the court that the Legislature intended by the adoption and enactment of section 2607 to make the burning of one building by setting fire to another, so that the fire so set would manifestly endanger the other building, to be one continuous arson should the fire be communicated to and burn the other building. This is the view taken of the identical statute by the Supreme Court of New York in Wood-

ford v. People, 62 N. Y. 117, 20 Am. Rep. 464, wherein it was held:

"An indictment charging as a single act the burning of a number of designated dwelling houses charges but one offense, and is therefore not bad for duplicity.

"The criminal act is kindling the fire with felonious intent to burn the houses specified, and is consummated when the burning is effected; and the fact that the houses did not burn at the same time, and that but one was set on fire, the fire communicating therefrom to the others, do not make the burning of each a separate offense."

In 2 Ruling Case Law, § 12, p. 508, it is said:

"In the case of arson a single offense may be committed although several houses or articles are burned, provided only one fire was set. Consequently an indictment for arson which charges as a single act the burning of several houses charges but one offense and is not bad for duplicity."

See, also, State v. Colegate, 31 Kan. 511, 3 Pac. 346, 47 Am. Rep. 507; Early v. Commonwealth, 86 Va. 921, 11 S. E. 795.

The conclusion is reached that the information charges but a single act or transaction of burning, and is not bad for duplicity.

It is next contended that the trial court erred in overruling a motion of plaintiff in error to quash and set aside the panel or array of talesmen. The record discloses that the trial court made an order for the sheriff of Choctaw county to summon a special venire of 20 talesmen, and counsel for defendant moved to quash this panel on the ground that the said sheriff's name was endorsed as a witness on the information to be used by the state against defendant.

None of the proceedings had upon the trial of this challenge are set forth in the record. While there is a recital to

the effect that the said talesmen were summoned by the sheriff, and it also appears that two of said talesmen served upon the jury, there is no showing that the sheriff was a material witness against defendant, and, on the contrary, it appears that the sheriff was not produced and did not testify as a witness in the case.

It has been repeatedly held by this court:

"On appeal the burden is upon the appellant to establish both error and prejudice resulting therefrom." Cardwell v. State (No. A-3272), 20 Okla. —, 201 Pac. 817, opinion filed June 4, 1921."

As plaintiff in error has not brought before this court the record of hearing had upon the challenge to the special venire of talesmen, and, further, it not appearing that the sheriff was a material witness against defendant, it cannot be said that the trial court, in the absence of such a showing and proof, committed error prejudicial to the substantial rights of defendant in overruling the challenge to the special venire.

It is next contended that the trial court committed reversible error in permitting J. D. Moore, the codefendant, to testify on behalf of the state. The particular ground is that the said codefendant was an incompetent witness because the charge against him had not been dismissed at the time he was called to testify. The codefendant, Moore, had asked for and had been granted a severance, and Dumas was alone upon trial.

Section 5879, Revised Laws 1910, provides:

"When two or more persons are included in the same indictment or information, the court may, at any time before the defendants have gone into their defense, on the application of the county attorney, direct any defendant to be discharged from the indictment or information, that he may be compelled to be a witness for the state."

Section 5880, Id., also provides:

"When two or more persons are included in the same indictment or information, and the court is of the opinion that in regard to a particular defendant there is not sufficient evidence to put him on his defense, it must, before the evidence is closed, in order that he may be compelled to be a witness for his codefendant, submit its opinion to the jury, who, if they so find, may acquit the particular defendant for the purpose aforesaid."

Section 5881, Id., provides:

"In the trial of all indictments, informations, complaints and other proceedings against persons charged with the commission of a crime, offense or misdemeanor before any court or committing magistrate in this state, the person charged shall at his own request, but not otherwise, be a competent witness, and his failure to make such request shall not create any presumption against him nor be mentioned on the trial; if commented upon by counsel, it shall be ground for a new trial."

From a consideration of the foregoing statutes, together with sections 21 and 27, art. 2, Constitution of Oklahoma, the conclusion is reached that section 5879, relating to the discharge of a defendant as a witness, applies only where the defendants are both upon trial, and it is the purpose of the prosecution to compel one defendant to be a witness against the other. The said statutes have no relation to the voluntary giving of testimony by a defendant. In this case the codefendant, Moore, asserted no right under the Constitution against compulsion to give evidence which might tend to incriminate him. He testified freely and voluntarily.

In Brown v. State, 9 Okla. Cr. 382, 132 Pac. 359, in passing upon the identical question here involved, this court held:

"Where two or more persons are jointly indicted, the state may use one of such defendants either before or after

conviction as a witness against the others without first dismissing the prosecution against the defendant so used as a witness.''

Section 5881, supra, and section 21, art. 2, Constitution, are provisions intended solely for the protection of the defendant, and should he assert his claim against giving incriminating evidence, then section 27, art. 2, Constitution, may be resorted to by him where he gives testimony or produces evidence tending to establish the guilt of his codefendant. The matter of giving evidence against a codefendant voluntarily is his privilege at all times, but he may assert his claim to protection against compulsion to so testify as to evidence that might incriminate him under sections 21 and 27, art. 2, Constitution. In such an instance (compulsion), if it be upon a joint trial, the charge against him may be dismissed as provided in sections 5879 and 5880, supra; or if, upon a joint trial or not, he testifies in good faith under compulsion, he may subsequently assert his rights against further prosecution on account of such testimony or evidence under the protection afforded by section 27, art. 2, Constitution.

From this record, however, the court concludes that the codefendant testified voluntarily, that he claimed no privilege against self-incrimination, and that he was a competent witness for the state upon a separate trial. We regard this assignment of error, therefore, without substantial merit.

It is next contended that the trial court erred in permitting evidence of certain transactions between defendant and Madill Grain & Elevator Company, which tended to show that defendant had defrauded said company while acting as its agent by drawing certain fictitious drafts for materials not bought by him for said company, and also by permitting certain materials bought and paid for by said company to be extracted from the warehouse prior to the fire.

In this connection it was the contention of the state that defendant set fire to the warehouse for the purpose of concealing the evidence of these other offenses. This evidence tended strongly to show a motive on the part of defendant to burn the said warehouse at that time, and also his intent in the burning of it. In 2 Ruling Case Law, § 21, p. 517, it is said:

"A rule applicable in criminal prosecutions generally renders inadmissible evidence of any offense other than that for which the prosecution is had. To this rule there are exceptions, and one of them is that when it is material to show the intent with which the act charged was committed, to illustrate its criminality, or to identify the accused as the person who committed the act, such evidence is admissible. This rule is applicable to prosecutions for arson."

In McLaughlin et al. v. State (No. A-3574) 18 Okla. Cr. 627, 197 Pac. 717, opinion rendered May 7, 1921, it is held:

"Evidence material to the issues, and tending to shed light on the guilt of defendants, is not rendered incompetent because it may, incidentally, involve defendants in the commission of a distinct offense."

Also, upon the subject of motive or intent, other transactions tending to prove its criminal existence, even though they may involve other offenses, may be given in evidence against defendant. Smith v. State, 3 Okla. Cr. 629, 108 Pac. 418; Carter v. State, 6 Okla. Cr. 232, 118 Pac. 264.

The record before us discloses that as to the defendant, Dumas, the evidence allowed to be admitted in this case as to other offenses clearly tended to show that the motive for the commission of this arson grew out of the collateral crimes, and the court, in instructing the jury, specifically told the jury as follows:

"You are instructed that the testimony with reference to drafts and with reference to the corn and cotton seed in the building that is alleged to have been burned was admitted for one purpose only, and that purpose to show the motive, if

any, existing upon the part of the defendant to burn said building, and cannot be cons¡dered for any other purpose.''

The conclusion is reached that the evidence introduced tending to connect defendant with the commission of other offenses, limited by instruction No. 9, supra, was properly admitted, and the ruling of the trial court in overruling defendant's objection to its admission was, under the circumstances disclosed by this record, not error.

It is also contended that the trial court erred in permitting a witness to testify to a certain conversation had with defendant shortly after the fire, in which defendant admitted that he set out the fire. It is contended that the record discloses that such evidence was not a free and voluntary confession on the part of defendant, but was induced by reason of promises and immunity held out to him. In connection with this assignment we deem it sufficient to say that the record before us does not support the contention urged.

It is also contended that the evidence is insufficient because based on the uncorroborated testimony of the accomplice, Moore. This contention is without merit. There are ample facts and circumstances in the record of the evidence before us, independent of the testimony of the alleged accomplice, tending to connect defendant with the commission of this offense. We deem the corroboration sufficient.

This cause is fully briefed, and was ably argued by counsel for appellant at the time of its submission. This court has given careful consideration to all grounds advanced and urged as reasons for a reversal of this judgment. An examination of the record, the brief, and authorities in support thereof, and a consideration of the argument made, fails to convince this court that any error occurred, from the inception of this prosecution to its close, prejudicial to the substantial rights of defendant. We think that defendant had a fair and impartial trial according to the forms of law.

For reasons stated, the judgment of the trial court is affirmed.

DOYLE, P. J., and BESSEY, J., concur.