ROY WILLIAMS et al. v. STATE.

No. A-5894. Opinion Filed Sept. 30, 1926.
(249 Pac. 433.)

172

T. H. Davidson and M. D. Hartsell, for plaintiffs in error.

Geo. F. Short, Atty. Gen., for the State.

EDWARDS, J.  The plaintiffs in error, hereinafter called defendants, were convicted in the district court of Muskogee county on a charge of robbery with firearms and sentenced to serve a term of 31 years in the state penitentiary.

It appears from the record that on December 20, 1924, two men appeared at the store of Robert Nesbitt, at which Nesbitt and a young woman named Rhoda Bowman were working, and by pointing a pistol made them

hold up their hands; they then robbed the person of Nesbitt and rifled the cash register. One of the robbers wore a peculiar pair of glasses with divided lens, the top part colored and the lower part clear. Defendants were arrested in Muskogee on the 6th day of January following. Each had a revolver, and defendant Simpson had in his pocket a pair of glasses answering the description of those worn by one of the robbers. Both Nesbitt and Rhoda Bowman identified defendants as the persons engaged in the robbery. The defense was an alibi. Simpson testified; at the trial Williams did not take the stand.

Many assignments of error are set out in the petition, some of which will be discussed. The first assignment contests the sufficiency of the evidence. We deem it unnecessary to make a more extended recital of the facts. There is no doubt but that the robbery was committed by two persons, by the use of firearms. The positive identification of the defendants as the persons committing the robbery, with the corroborating circumstances, was sufficient to take the case to the jury, and, if the trial was otherwise without prejudicial error, sufficient to sustain the judgment.

The evidence of alibi presented a question of fact for the determination of the jury. The contention of defendants on this assignment cannot be sustained.

The admission of incompetent evidence is next complained of, and the argument is directed to several objections made during the course of the trial, one of which is that the arresting officers were permitted to testify that they found a pistol on the persons of each of defendants when arrested and the circumstances of the arrest. It is claimed that the arrest was illegal; the officers not having a warrant, and no offense at the time having been committed or attempted in their presence, and that defendants were not suspected of the commis-

sion of a felony. The evidence discloses that the arrest was made in response to a call. The purport of the call or the information it contained was not in evidence. A felony had been committed; whether or not there was reasonable cause for believing the defendants to have committed it is not clear. This was not of any particular importance, and no material prejudice could have followed. It is also urged that the questioning by the county attorney of defendant Simpson as to whether his codefendant Williams was in the penitentiary at the time Simpson was an inmate is error. This was not an attack upon the character of the defendant Williams, but was admissible as tending to show the previous association, or acquaintance of the defendants. Complaint is also made of the admission in evidence of a hat found at the residence of Jack Culver, at whose place Simpson testified he had been staying, and which was similar to a hat worn by Simpson at the time of the robbery. Defendants urge that this was procured by an unlawful search. This hat was not procured at the place where the defendants resided, but at the home of another person. The immunity from an unreasonable search is personal, and has application only to the invasion of the residence of an accused and not to the premises of some third person. This has frequently been decided by this and other courts. There was no error in the admission of this evidence.

It is also argued that in the course of the trial the county attorney was guilty of misconduct in the examination of the jury and witnesses, and in the argument a number of instances of misconduct are presented. The witness Beck was used by the defense to prove an alibi. He testified defendants were residing at his premises on the day of the robbery and were at his house at that time; he fixed the time by the fact that a small mare of his fell on the ice that day and defendants helped him

treat her. Defendants calling this witness, showed that he was subpoenaed as a state witness. He was not used by the state. The inference naturally followed that his evidence would be unfavorable. On cross-examination he stated he had told no person what his testimony would be, nobody had asked him, and had talked with nobody. He was then asked in reference to talks about the case to different persons, including a talk with the county attorney, which he admitted. The county attorney developed that he had talked with the witness, and in substance the witness admitted that he did not disclose the facts truthfully. In the course of this cross-examination, the county attorney several times asked the witness why he had lied, or if he did not know he had lied about it, as the following will illustrate:

"* * * By Mr. Lockowitz: Q. Then you lied when you told the jury a while ago you hadn't talked about the case?

"Mr. Hartsell: Object to that as improper cross-examination.

"The Court: Go ahead.

"Mr. Hartsell: That is our ground of objections.

"The Court: Go ahead.

"Mr. Hartsell: We except.

"By Mr. Lockowitz: Q. Did you lie when you said that? A. You asked me between the hours of 5 and 7. * * *

"Q. You say just because you said it was me that is the reason you lied to this court?

"Mr. Hartsell: We object, incompetent, irrelevant, and immaterial, not proper cross-examination.

"The Court: Overruled.

"Mr. Hartsell: Exception.

"By Mr. Lockowitz: Q. Don't you know you lied to me before and that is the reason I didn't put you on the witness stand before, because you lied to me?

"Mr. Hartsell: We object to the brow-beating manner in examining the witness.

"The Court: The court has ruled on it.

"Mr. Hartsell: And is incompetent, irrelevant, and immaterial.

"The Court: The court has ruled on it, as I have heretofore told you.

"Mr. Hartsell: We except.

"By Mr. Lockowitz: Q. Then why did you lie?

"Mr. Hartzell: We object, incompetent, irrelevant, and immaterial, and improper.

"The Court: Overruled.

"Mr. Hartzell: Exception.

"By Mr. Lockowitz: Q. Why didn't you tell the truth —you lied about this other statement on my account? A. Because you were prosecuting attorney, and I was trying to give you some information.

"Q. You were trying to lie to me? A. You can take it the way you want to. * * *

"Q. I will ask you if you didn't testify that Ves Carmack and Paul Davis tried to get some information and you wouldn't give it to them? A. Yes, sir.

"Q. Now, you say you did tell them they left that night about 10 o'clock, and you lied, didn't you?

"Mr. Hartsell: Object, incompetent, irrelevant, and immaterial, not proper cross-examination, and we object to the brow-beating method of the county attorney.

"The Court: Overruled.

"Mr. Hartsell: Exceptions. * * *"

We condemn the tone of the cross-examination; it was misconduct. Prochneau v. State, 32 Okla. Cr. 210, 240 P. 1090. Whether or not the witness testified falsely was for the jury to say. There is undoubtedly a great deal of perjury in the courts, and a vigorous and searching cross-examination should be allowed in order that it may be exposed or broken down. A proper sense of dignity, however.

requires that the proceedings in the trial of a criminal case shall be conducted in an orderly and courteous manner. This savors too much of third degree methods. The evidence of guilt must be overwhelming before we can affirm a conviction obtained in this manner. A prosecuting officer must not indulge in such tactics. The trial court should not permit it.

The record shows that, in the examination of the jury, the county attorney asked, "Would the fact that defendants did not take the stand be taken into consideration by any of the members of the jury?" to which objections and exceptions were taken. Section 2698, Comp. Stat. 1921, forbids mentioning on the trial the failure of a defendant to testify, and provides that, if commented on by counsel, it shall be ground for a new trial. This court has many times considered this statute. Ward v. Territory, 8 Okla. 12, 56 P. 704; Dorsett v. State, 16 Okla. Cr. 65, 180 P. 557; Dumas v. State, 19 Okla. Cr. 413, 201 P. 820; Sturgis v. State, 2 Okla. Cr. 362, 102 P. 57. The trial had commenced when the jury were called into the box for examination. Ward v. Territory, supra. Certainly the effect would be the same if called to the attention of the jury at that time as later in the trial. This was a "mention on the trial" but not a "comment." That part of the statute forbidding comment has been held mandatory and not a matter of discretion with the trial court. Brown v. State, 3 Okla. Cr. 442, 106 P. 808; Kelley v. State, 6 Okla. Cr. 175, 117 P. 887; Sturgis v. State, supra. Since the enactment of our harmless error statute, section 2822, Comp. Stat. 1921, those two sections should be construed together, and, if it is apparent from the record that a defendant is guilty and the jury could have arrived at no other verdict the mere fact of comment would not require a reversal. We do not understand why the question was propounded by the county attorney or permitted by the court.

Error is next urged in comments of the trial court. It

is claimed that in one instance the court in the presence of the jury threatened to fine counsel for defendant. This is hardly borne out by the record. The following appears:

"Mr. Lockowitz: Q. I will ask you whether or not—

"Mr. Hartsell: I think he should answer the question (referring to previous question). You can answer the question, Mr. Beck, he's not half so bad as he—

"The Court: Wait a minute. Somebody is going to get separated from some of their money in a minute. * * *"

The counsel for defendants state that their interruption was meant to be jocular, and that he started to say: "You can answer the question, Mr. Beck. He is not half so bad as he looks." The interruption of counsel was improper and merited a rebuke. We gather that the remark of the court was also jocular and not a threat to impose a fine. The contention is without merit.

Under the same head, in another part of the record, in cross-examining the witness Rhoda Bowman, the following occurred:

"By Mr. Davidson: Q. Which one of the men got the money? A. The smaller one, the one with the cap on.

"Q. Have his gun in his hand at that time? A. I couldn't say; I didn't see his gun at that time.

"Q. Now, immediately after this robbery occurred, you reported it, didn't you? A. A man came in the store after they left, it was reported after—

"The Court: You cannot be impolite to this witness.

"Mr. Davidson: We except to the remark of the court.

"The Court: The defendant excepts. Let the record show I consider his attitude impolite to the witness.

"Mr. Davidson: We except. * * *"

If there was any impropriety in the conduct or question of counsel, it must have been in his manner, for we

do not perceive anything in the record to call for the rebuke which is implied in the language of the court.

Various other assignments are argued. They are not likely to arise upon another trial. It would serve no purpose to consider them in detail.

The case is reversed and remanded.

The warden of the penitentiary will surrender the defendants to the sheriff of Muskogee county, who will hold them in custody until they shall be discharged, or their custody changed by due course of law.

BESSEY, P. J., and DOYLE, J., concur.