## DAN PROCHNEAU v. STATE.

No. A-5178. Opinion Filed Nov. 2, 1925.
(240 Pac. 1090.)

Seymour Foose and R. C. Brown, for plaintiff in error.

The Attorney General, for the State.

DOYLE, J. The information in this case charges that in Blaine county, February 8, 1924, Dan Prochneau "did sell to one B. E. Slagle one pint of whisky." On the trial the jury returned a verdict finding him guilty as charged in the information and fixing his punishment at a fine of $75 and confinement for 30 days in the county jail.

The errors relied on, and upon which the defendant asks for a reversal, are as follows: That the court erred in refusing to admit evidence offered by the defendant on the trial of the case; that the prosecuting witness B. E. Slagle was guilty of misconduct, on the trial in the presence of the jury, prejudicial to the rights of the defendant; that the prosecuting attorneys were guilty of misconduct during the trial and in the presence of the jury prejudicial to the rights of the defendant; and that the verdict is not supported by sufficient evidence.

B. E. Slagle testified that his home is in Carman, Alfalfa county; that he was employed and commissioned as a deputy sheriff in Blaine county in the month of February, 1924; that his business was catching bootleggers, and in the evening of the 8th day of February, he went into the defendant's restaurant and bought a pint of liquor from the defendant, for which he paid him $2.50; that his wife was present at the time; that he turned the pint of liquor over to the city marshal. The bottle was introduced in evidence, bearing the label as follows:

"2—8—24 Bought from Dan Prochnoor one pint of

whisky at his cafe. Delivered to me in the kitchen of his place. B. E. Slagle."

On cross-examination he stated that the business men of Canton paid him $10 a day and his expenses to come down there. He was then asked: "During that time you furnished whisky to four boys under 21 years of age, didn't you?" The state objection sustained.

On behalf of the defendant, Mrs. Prochneau testified that B. E. Slagle came into their restaurant about supper time and asked her husband if he knew where he could get anything to drink, and her husband said, "No"; that she remained in the restaurant that evening until about 11 o'clock, and Slagle came back again in about half an hour with a man called Dipper, and her husband sold him two cigars; that Slagle acted like he was drunk. As he went out he staggered and could not walk straight.

As a witness in his own behalf, the defendant testified that B. E. Slagle came into his restaurant in Canton about 6 o'clock in the evening and asked him if he could get him some whisky, and he told him no, and Slagle said: "I have been out to the Indian Camp, and we had a quart when we started out there, but we drank it up, and I would like to get some more," and he told him he could not get him any, and Slagle started off saying: "I am pretty well liquored up, and I want to go back out there." In about 30 minutes he returned with a fellow called "Dipper," whose name is Morrel, and he bought two ten cent cigars, paid for the same, and then went out.

Boyd Bates testified that he had lived in and near Canton all his life; Saw B. F. Slagle about 7 o'clock in the evening and he was drunk. He was then asked:

"Q. Did you see him drink any intoxicating liquor that afternoon? A. Yes, sir.

"County Attorney: Object.

"The Court: Sustained. Answer stricken from consideration of the jury.

"Mr. Foose: I have this witness and several others, and I want to offer this testimony formally, then in detail.

"The Court: The jury will retire.

"Mr. Foose: We now offer to prove by this witness that about 2 or 3 o'clock, February 8th, B. E. Slagle, this witness, George Hollander, and George Phipps were in the back room of the real estate office of Myers & Schmidt, and said B. E. Slagle produced a bottle of whisky; that Earl Hunt, a minor, of the age of 18 years, entered the room and said to B. E. Slagle that he had only 30 cents, but that he wanted a drink, and Slagle handed the bottle to Ralph Hunt; that George Hollander protested that boys were not allowed to drink whisky; that Ralph Hunt took a drink of whisky out of the bottle and paid Slagle 30 cents for it; that immediately afterwards George Phipps took a drink and paid Slagle 50 cents for it; and that Boyd Bates, the witness on the stand, took a drink of the same whisky and paid Slagle 50 cents for it; and that George Hollander took a drink but did not pay and handed the bottle back to Slagle, and he put it in his pocket. We offer to further prove that B. E. Slagle was intoxicated at this time.

"The County Attorney: The state objects to the offer.

"The Court: Sustained. Exception allowed.

"Counsel for defense further offers to prove by the witnesses Ralph and George Hollander the facts as stated:

"The Court: Objection sustained.

"The jury returned into court.

"During the trial counsel for the defense stated to the court that B. E. Slagle, sitting outside the railing from the jury, and during the examination of the witnesses, habitually expressed his disapproval of their testimony by staring at them in an intensely angry manner, and in an undertone has called witnesses liars in the hearing of the jury.

"The Court: I haven't heard or seen that.

"Counsel for the Defense: We now offer to introduce testimony to prove that yesterday evening, when he was on the witness stand and I was addressing the court, he called me a 'damn liar.' If it is in the record, I want to assign that as prejudicial error.

"The Court: Well, I don't care to go into that at this time."

George Stevens testified that he lives in Carman, Alfalfa county, and knows B. E. Slagle, and knows his general reputation in that community for truth and veracity, and that it is bad. On cross-examination he stated that his brother married Slagle's sister.

Henry Cooper testified that he lives at Thomas, 74 years old, a Civil War Veteran, and has known B. E. Slagle 16 or 17 years, and knows his reputation for truth and veracity in the community in which he resides, and it is bad.

James Palmer testified that he knows the reputation of B. E Slagle for truth and veracity, and it is not very good.

In rebuttal, Dr. Henry Huston testified that he was a practicing physician at Watonga, and knows the general reputation of B. E. Slagle for truth and veracity, and that it was good.

Mrs. Henry Huston testified that she knows B. E. Slagle's reputation for truthfulness and veracity, and it is good.

The court erred, we think, in sustaining the state's objections to the testimony offered, showing or tending to show that prosecuting witness had in his possession a bottle of whisky, and that he had been drinking all that afternoon before the time he claims to have purchased whisky from the defendant.

The rule is universal that the parties in the trial of a cause are at liberty to impeach the testimony of a witness by showing that he was intoxicated at the time of the events about which he testifies.

In Green v. State, 53 Tex. Cr. R. 490, 110 S. W. 920, 22 L. R. A. (N. S.) 706, it is said:

"We think the rule in any case should be, where a witness is produced and undertakes to give a statement of the facts coming under his observation, transactions to which he is a party and on which the guilt of a citizen is sought to be established, that with a view of testing the credibility of the witness, his opportunity for observation, the state of his memory, the condition of his mind and all that, that it should and would be proper to interrogate the witness as fully as might be necessary in respect to his condition of drunkenness or sobriety."

In Morris v. State (Ala.) 39 So. 611, it is said that the right thus to impeach a witness' testimony by cross-examination rests upon the principle that "it is always competent, on cross-examination, to elicit from the witness 'all facts tending to show his means of obtaining a correct and accurate knowledge of the facts to which he bears testimony, the manner in which he has used these means, his powers of discernment, memory, and description.'"

In State v. Rollins, 113 N. C. 732, 18 S. E. 398, it appeared that a witness for the state, in testifying as to the particulars of a crime committed in his presence, stated that he was not drunk at the time, whereupon evidence to the effect that he was drunk was offered, but rejected by the trial judge. The appellate court, holding that the evidence was admissible, said:

"Had this been pertinent only to impeach his character, his answer would have been conclusive. * * * But it went rather to his capacity to know and remember with accuracy what took place. It was error, therefore, to ex-

clude proof offered to show that he was 'very drunk on that occasion.' "

And see Willis v. State, 43 Neb. 109, 61 N. W. 254.

In support of the motion for new trial, the affidavits of three witnesses as to the misconduct on the part of the prosecuting witness was undisputed, and the record shows that while the prosecuting witness was on the stand, counsel for the defendant addressing the court said, "We can prove that he was drunk." This witness said: "You are a liar; you can't do no such thing." It is impossible to say that the defendant was not prejudiced by such misconduct on the part of the prosecuting witness.

The only evidence in the case against the defendant was the uncorroborated testimony of B. E. Slagle. He states that he was commissioned as a deputy sheriff of Blaine county, although a resident of Alfalfa county, and that he was employed for the purpose of securing evidence upon which to base prosecutions for violations of the prohibitory law. This witness was flatly contradicted by the defendant and two other witnesses, in addition he was successfully impeached by three or four other witnesses, and as shown by the record he was guilty of gross misconduct on the trial.

All good citizens have an interest in the vindication of public justice and maintaining the majesty of the law. It is a matter of common knowledge that the most potent factor of the dishonest dispensation of justice is the production of untruthful testimony upon the witness stand. Generally speaking, a private detective is not overscrupulous in the truthfulness of his testimony, and such evidence should be viewed with caution, as it may not be entitled to very much credence.

While the cases are rare in which this court interferes to disturb the judgment of the trial court, and it is only

in a case where the verdict is clearly contrary to the evidence, or when from the doubtful character of the evidence against the defendant the preponderance in his favor is such that it is evident that the jury were influenced by passion or prejudice, that a judgment will be reversed because the evidence is insufficient to sustain it. In this case, we think that the evidence, unless we are to discredit entirely the testimony of unimpeached witnesses, falls within the rule laid down by these cases.

For the reasons stated, the judgment of the lower court is reversed, with direction to dismiss.

BESSEY, P. J., and EDWARDS, J., concur.