# FRED SMITH v. STATE.

No. A-5589.   Opinion Filed June 10, 1926.
(246 Pac. 1104.)

W. L. Owen and Titus & Talbot, for plaintiff in error.

The Attorney General and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE, J.   In this case the information charges that in Alfalfa county, January 22, 1925, Fred Smith did sell "two quarts of whisky to one Bert Slagle."   On the trial the jury returned a verdict finding him guilty, leaving the punishment to be assessed by the court.   Motion for new trial was duly filed and overruled, and on February 17, 1925, the court sentenced the defendant to pay a fine of $500 and to be confined in the county jail for a term of six months.

The errors assigned question the sufficiency of the evidence to sustain the verdict and judgment, and are based on exceptions reserved to the rulings of the court in the course of the trial.

B. E. Slagle, complaining witness, testified that his home was in Carman; that he had been working with the federal authorities, sheriff forces, and police departments in different counties of the state for the past year; that on the afternoon of January 22nd, he went to the home of Fred Smith, 12 miles west of Wakita, stopped his car in the yard, and Smith sold him two quarts of whisky, for which he paid $7; that he took the containers to Wakita and turned them over to a druggist there; "that when they got through with it, they turned it to the sheriff at Medford, and the sheriff there turned it to the sheriff at Cherokee."

Counsel for the defendant in his cross-examination of prosecuting witness asked:

"Q. Have you ever been convicted of a crime?

"By Mr. Kirkendall: Objected to as incompetent, irrelevant, and immaterial, an improper question.

"The Court: Sustained. Exception allowed."

Dare Goss, sheriff, testified and identified Exhibits 1 and 2, the same being quart jars partly filled with whisky, and stated they were delivered to him by the sheriff of Grant county and Bert Slagle.

The defendant moved for a directed verdict in the form of a demurrer to the evidence, which was overruled.

As a witness in his own behalf, Fred Smith testified that he lived 11 miles east of Byron, in Alfalfa county; that he homesteaded the place and had lived there with his wife and children 24 years; that the first time he ever saw Bert Slagle was this morning; that on the 22d day of January, 1925, he went to Wakita to have his car repaired, but because they wanted too much he went to Manchester and had it repaired there and gave the mechanic a check for $2, and the old radiator

was taken in for $3; that it was about 7 o'clock when he left Manchester for his home, 13 miles away; that he never did sell any whisky to Bert Slagle or any other person.

The defendant's wife testified that she was at home on the 22d of January all day; that Mr. Locke was the only person that passed there that day in a car, and he stopped about 1 o'clock; that her husband left home about 9 o'clock in the morning and did not return until about 8 in the evening; that she was just putting the children to bed when he came in.

One of the grounds of the motion for a new trial was—

"newly discovered evidence material to the defendant, which he could not with reasonable diligence have discovered before the trial, and surprise at the evidence of the prosecuting witness, Bert Slagle, in this, to wit: That said Slagle testified that he purchased two quarts of whisky from defendant on January 22, 1925, about 5 o'clock. That defendant since the trial has learned that the said Bert Slagle's reputation for truth and veracity, and as a law-abiding citizen in the community in which he lives is bad. That this defendant never saw the said Bert Slagle until the day of the trial. That defendant was placed in jail on the 29th day of January, made bond on the 31st day of January, and was immediately arrested by the sheriff of Grant county, and removed to Medford, where he was held in custody until the 16th day of February, and was unable to consult with his attorney herein until the day before the trial. All of which is shown by affidavits hereto attached and made a part of this motion for a new trial."

Also, the affidavit of Joe C. Alley, operating a garage in Manchester, to the effect that on January 22nd, he installed a new radiator on defendant's Ford car and worked on the same in defendant's presence from about 5 o'clock in the afternoon on the said day until 7 o'clock,

and received from defendant a check in part payment for said work.

Our statute provides (section 585, C. S. 1921) that a witness may be discredited by showing his conviction of a criminal offense, and the court erred in sustaining the state's objection to the question asked on cross-examination of the prosecuting witness. Key v. State, 10 Okla. Cr. 206, 135 P. 950; Busby v. State, 10 Okla. Cr. 343, 136 P. 598; Graham v. State, 28 Okla. Cr. 266, 230 P. 763; Davis v. State, 15 Okla. Cr. 386, 177 P. 621.

The only evidence in the case against the defendant was the uncorroborated testimony of B. E. Slagle, who, as shown by numerous decisions of this court, has heretofore been successfully impeached and discredited as a witness.

In Prochneau v. State, 32 Okla. Cr. 210, 240 P. 1090, he was the prosecuting witness. We said:

"All good citizens have an interest in the vindication of public justice and maintaining the majesty of the law. It is a matter of common knowledge that the most potent factor of the dishonest dispensation of justice is the production of untruthful testimony upon the witness stand. Generally speaking, a private detective is not overscrupulous in the truthfulness of his testimony, and such evidence should be viewed with caution, as it may not be entitled to very much credence."

While the cases are rare in which this court interferes to disturb the judgment of the trial court, and it is only in a case where a verdict is clearly contrary to the evidence, or when from the doubtful character of the evidence against the preponderance in his favor is such that it is evident that the jury were influenced by passion or prejudice, that a judgment will be reversed because the evidence is insufficient to sustain it. In this case we think that the evidence, unless we are to dis-

credit entirely the testimony of unimpeached witnesses, falls within the rule laid down by these cases.

For the reasons stated, the judgment of the lower court is reversed, with direction to dismiss.

BESSEY, P. J., and EDWARDS, J., concur.