## M. J. OTEY v. STATE.

No. A-5738. Opinion Filed Jan. 21, 1928.
(263 Pac. 155.)

62

John P. Hickam, W. H. Wilcox, Freeman E. Miller, and Wallace G. Hughes, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter called the defendant, was indicted in the district court of Payne county, February 19, 1924, the indictment charging:

"That on or about the 13th day of July, 1924, one M. J. Otey, who was then and there duly appointed, qualified, and acting chief clerk of the Argicultural and Mechanical College, an institution corporate under the laws of the state of Oklahoma, and as such chief clerk and public officer, did have charge of the revolving fund of the said Agricultural and Mechanical College, which said fund was also designated as Chief Clerk Account, Chief Clery Fund, and 'Chief Clerk Account No. 1,' and Chief Clerk Account No. 2, and as such officer was bounden to receive and deposit the moneys due said revolving fund into the account belonging to said fund, and to faithfully account for the same. That, as such officer, and by means of said office, did, on the said day and date, and at and within the county of Payne, state of Oklahoma, receive a warrant, issued by the state of Oklahoma, against the general revenue fund of the state of Oklahoma, and payable to M. J. Otey as such officer, for the purpose of reimbursing the said revolving fund; said warrant being No. 62593, under date of July 1, 1922,

and in the sum and amount of $1,989.50 and of the value of $1,989.50 in good and lawful money of the United States of America, and the same being the property of, and belonging to, the said Agricultural and Mechanical College, at Stillwater, Okla., and due to, and belonging to, the revolving fund of said institution, and said M. J. Otey did willfully, wrongfully, fraudulently, and feloniously embezzle, convert, and appropriate the said warrant so received to his own use and benefit, in violation of his official duty and trust, without authority of law, and did put said warrant and proceeds thereof to use and purpose inconsistent with, and in violation of, the duties of his trust and office, with the fraudulent intent on the part of the said M. J. Otey to permanently and fraudulently deprive the said Agricultural and Mechanical College, at Stillwater, and revolving fund of said institution at the same time, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Oklahoma."

On the 7th day of May, 1924, motion was filed by the defendant to set aside the indictment, which motion was, on May 10, 1924, overruled by the court, and defendant reserved an exception. On May 10, 1924, the defendant filed a demurrer to the indictment, which demurrer was by the court heard, considered, and overruled, and exceptions duly saved. The defendant entered his plea of not guilty. The cause was assigned for trial February 2, 1925. The case proceeded to trial, and the jury returned a verdict of guilty, leaving the punishment to the court.

The court upon the verdict rendered by the jury sentenced the defendant to imprisonment in the penitentiary at McAlester for eight years from the date of the delivery of the defendant to the warden of the penitentiary, and to pay a fine of $500, and cost of the action. To the imposing of the sentence upon the defendant, defendant duly excepted, and prayed appeal. To reverse the judgment defendant has appealed to this court.

For convenience, we will consider the errors assigned in the following order: First, assignment No. 12:

"(12) The court erred as a matter of law in overruling the motion of the defendant, filed on the 2d day of February, 1925, asking for a continuance of this case, the said reason being set forth that Senator Hughes, a member of our state Senate, and one of the counsel for the defendant in said cause, was unable to be present as shown by the said motion. The record and ruling of the court at the time to each was duly excepted, and which exceptions by the court were duly allowed."

Defendant's motion for continuance was based on a provision of section 583 of the Compiled Statutes of Oklahoma 1921. That part of said section which applies to this case is as follows:

"Provided, that if the party or his attorney of record is serving as a member of the Legislature or the Senate, sitting as a court of impeachment, or within ten days after an adjournment of a session of the Legislature, such facts shall constitute cause for continuance, the refusal to grant which shall constitute error, and entitle" the defendant "to a new trial as a matter of right."

This court passed upon this question in the case of Holloway v. State, 37 Okla. Cr. 24, 255 P. 1022, adversely to the contention of the defendant in this case, in which the court uses the following language:

"It will be observed that, at the time Senator Goodall was employed, the Legislature was in session, and had been in session some weeks. Defendant knew at the time he employed Mr. Goodall that he was a member of the Legislature; knew that he could not be present at the trial of his case; and was then informed that his counsel would apply for a continuance for him.

"The purpose of this statute was, no doubt, to encourage members of the bar to become candidates for the lawmaking body of the state, and to protect a defendant whose attorney, presumably familiar with his case, could not attend his trial by reason of official duty, and to protect members in their business while serving the state in this capacity by preventing trials of cases where they are attorneys of record during a session of the Legislature and for ten days thereafter; that during this

time they should not be disturbed in their duties as lawmakers. The privilege of a continuance as a matter of right applies only to a defendant whose attorney of record is a member of the Legislature. A member of the Legislature, during a session of the Legislature, also has the right to contract for any new business presented to him, and if such business arises during a session of the Legislature, and he is employed, he would then be entitled to the benefits conferred by this statute. But, where an accused against whom a prosecution is pending prior to the convening of the Legislature, and who prior to such time has employed counsel as his attorney of record, he may not during a legislative session, by employing a member of the Legislature, procure a continuance on that ground as a matter of right."

We will next consider assignments 1 and 13, which assignments are as follows:

"(1) The court erred as a matter of law in permitting the introduction of incompetent, irrelevant, and immaterial testimony of the plaintiff, the state of Oklahoma, prejudicial to the defendant, and prejudicial to his rights, to which the defendant, at the time and in the course of said trial, objected, and which objection, was by the court overruled, to which ruling of the court the defendant at the time excepted, and which exception was by the court allowed, as shown by the record in said cause."

"(13) The court erred as a matter of law in the trial of the cause in permitting the introduction of the audit report made by one G. P. Balfour, for the reason that the same is incompetent, irrelevant, and immaterial, and prejudicial to the rights of this defendant, to which the defendant, at the time and in the course of said trial, objected, and which objection was by the court overruled, to which ruling of the court the defendant at the time duly excepted, and which exception was by the court allowed, as shown by the record in said cause."

These assignments of error may be considered together as they relate to the admission of testimony against the defendant. Defendant specially urges that

the court erred in the admission of the copy of the auditor's report alleged to have made by one G. P. Balfour, and especially in admitting a copy of the letter of G. P. Balfour transmitting his report to the examiner and inspector. Defendant objected to the admission of this record, which motion was overruled, and, after the letter accompanying the same had been introduced, moved to strike the report and letter, which is designated in the record as Exhibit R, and assigned five grounds each of which he contends is sufficient to have the testimony contained in Exhibit R excluded from the jury, which motion of the defendant was overruled, and the defendant duly excepted.

An examination of the record shows that the letter of the deputy examiner and inspector transmitting his report is full of statements showing his personal feeling, and gives his opinion as to what the facts show as to the audit. The letter hereinabove referred to covers ten pages of the record. It is so voluminous that we do not deem it necessary to set it out in full, but we do want to refer to one or two paragraphs in the letter to show the feeling of the inspector making the audit. On page 225 of the record appears the following:

"As time advanced, the system grew worse, less effective, and unreliable, until it ceased to reflect at any times true financial status of affairs, as was intended. Contrary to its purpose, it had the effect of falsifying all statements and reports sent out by the institution, as well as misleading those that should have had a firmer grasp on its financial status. This method is the prime factor responsible for its present condition, as is reflected by the exhibits and schedules herein. Not the system's fault, but the fault of the bonded financial officer whose duty it was to 'carry on,' and who was thoroughly instructed by this department in the keeping of system and the laws governing the same."

On page 233 the following appears:

"In the final analysis, the unbusinesslike methods pursued, the lack of records, and the lack of records that should have been kept by the purchasing agent, who was also the financial secretary, coupled with the lack of care in safeguarding cash, is responsible for an increased cost in support and maintenance, for, where credits have been abused and credits held up, it is plainly demonstrated in the schedule of outstanding liabilities, it is more than a certainty that purchases were made at a higher price than they would where settlements when due were promptly paid."

The letter was addressed to the examiner and inspector of the state, and was no part of the audit, but the conclusions of the deputy as expressed in his language to his superior officer. Again, on the margin of the audit were many notations in handwriting, and when the defendant moved to strike Exhibit R from the files on the ground that it was inadmissible, the special prosecutor for the state admitted that the notations on the margins had been made by him.

The question for this court to consider is, Were the copy of the audit offered in evidence and the letter transmitting it, and the notations shown on the margins of the audit, properly admitted as evidence against the defendant?

In Hays v. State, 22 Okla. Cr. 99, 210 P. 728, this court had a similar question before it, in which the court says:

"The defendant contends this evidence was incompetent and prejudicial, and that the error was not cured by its withdrawal from the jury. * * * This examiner's testimony, authenticating his official reports as well as the reports themselves, was competent as tending to throw light upon the question of whether or not the offense was committed, but mere conclusions of the examiner, independent of his official reports, are incompetent. For the reason previously stated, the motion to direct the jury to return a verdict of not guilty should have been sustained."

The letter transmitting the audit to the examiner and inspector only expressed the views of the compiler of the report, and was prejudicial to the rights of the defendant and the objections of the defendant should have been sustained.

This court holds that the admission of the letter transmitting the audit, together with the notations on the margins of the audit, over the objection of the defendant, was prejudicial to the rights of the defendant.

There are other errors assigned by the defendant, but, in the view we take of this record, we do not deem it necessary to discuss them. For the errors hereinabove stated, the case is reversed and remanded.

DOYLE, P. J., and EDWARDS, J., concur.