## W. B. JONES v. STATE.

No. A-6832.   Opinion Filed Nov. 23, 1929.
(282 Pac. 892.)

Burris & Crawford and Wimbish & Wimbish, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J.   The plaintiff in error, W. B. Jones, hereinafter referred to as the defendant, was convicted in

the district court of Pontotoc county of the crime of embezzlement, and sentenced to serve a term of three years' imprisonment in the state penitentiary and to pay a fine of $20,000.

The information charged the embezzlement by the defendant, who was the commissioner of accounting and finance and ex officio city treasurer of the city of Ada, of the sum of $10,000 of the public money and other funds, property, bonds, securities, assets, and effects of the said city, collected by the defendant, and received, held, and controlled by him by virtue of his said office and trust during the period from July, 1919, to November 8, 1921.

The state introduced in evidence what purported to be an audit, made by the firm of Wolfe & Company, accountants, by C. F. Miller, one of their employees, of the books and accounts of the city of Ada for the two years ending June 30, 1921, and the cash receipts and disbursements of the defendant as commissioner of accounting and finance and ex officio city treasurer of the city of Ada, for the period from July 1, 1921, to November 8, 1921. This audit revealed an apparent shortage of $10,268.83 on the part of the defendant as commissioner of accounting and finance and ex officio city treasurer.

The defendant objected to the introduction of this audit, and now assigns the admission of the same as error sufficient to require a reversal of this case. The rule laid down in the case of Hays v. State, 22 Okla. Cr. 99, 210 Pac. 728, is not applicable to the facts revealed in this case, for the reason that in the Hays Case, supra, the audit was prepared by deputies working out of the state examiner and inspector's office, and the audit, having been filed with the state examiner and inspector, became a

public record, and as such public record was admissible as primary evidence under section 654, C. O. S. 1921.

The audit prepared by Wolfe & Co., and introduced in evidence in the case at bar, was not a public record, and could not become primary evidence, except under the rule as laid down in 16 C. J. § 1211, p. 615. The rule is stated as follows:

"Books of account are the best evidence of the matters they contain; but where the books or accounts are multifarious and voluminous, and they are in evidence, or are admissible in evidence and are in court, or are otherwise accessible to court and counsel, it is proper to permit an expert accountant or other competent person who has examined the accounts to summarize the results of his examination."

An examination of the audit introduced in evidence discloses that it in nowise complies with the rule as laid down in Corpus Juris, supra. It appears from the evidence of the witness, Miller, who prepared the audit, that he made a detailed audit of the accounts of the defendant with the city of Ada from July 1, 1919, to June 30, 1921, and an audit of the cash received and disbursed from June 30, 1921, to November 8, 1921. The witness further testified that he made the audit from what was submitted to him as city records. The witness further testified that he was working for Wolfe & Co., and that, while the audit was made by him, it was the official report of Wolfe & Co.; that Wolfe & Co. were employed by the Chamber of Commerce of the city of Ada to make the audit, and that it was made under his supervision; that the witness prepared the report, and the same was O.K.'d by Wolfe & Co. and filed with the city clerk of Ada. On cross-examination the defendant's counsel asked the witness:

"Q. You got your information from records and from other parties and other instruments that didn't come to you direct from Jones, didn't you? A. Well, to some extent yes—

"By the Court: All right go ahead and tell where you got the records from which this audit was based.

"A. Well, you take for example, receipt water turned over from the water department, he gave receipts then, and naturally those receipts were in their office—and the money turned over to him, from that department would be in Mr. Jones' office—You take the meter deposits, the money put up for meters by the users, as a deposit, that we largely had to get from the records from the Oklahoma State Bank—Some of the receipts and records in Mr. Jones' office, he couldn't or didn't produce and we finally found some in his desk. In the meantime we went to the bank, Oklahoma State and M & P Bank and Security State bank and ascertained from them—"

The audit is a voluminous document covering 84 pages, and, although there are a great number of similar comments, it will only be necessary to set out a few of the extracts which are deemed to be pertinent to the issue in this case. They are as follows:

"We are informed that meter deposits were handled through an account known as W. B. Jones, Special in the Oklahoma State Bank of Ada, Oklahoma. As no ledger account thereof was found in the Cities records and a number of the bank's monthly statements for the period under audit were reported missing, an abstract of the bank's ledger account was secured."

"July 1st, 1919, Cash on hand and in banks and balance in meter deposit fund, for which the present Commissioner of Accounting and Finance is accountable, per the News Despatch Printing and Audit Co's. report of November 8th, 1919."

"Deposits to W. B. Jones, Special account in the Oklahoma State Bank, Ada, which we were advised was used as a depository for this fund, as tabulated by us from abstracts of the bank's ledger account, July 1, 1921, to November 8, 1921."

The notations above set forth and many others made on the margin of the audit, and taken from the same as introduced in evidence, show that these comments had no part in the audit proper, and disclose undefined sources from which the information was received, and the admission of the same was highly prejudicial to the rights of the defendant.

In the case of Otey v. State, 39 Okla. Cr. 61, 263 Pac. 155, 158, this court said in the body of the opinion:

"This court holds that the admission of the letter transmitting the audit, together with the notations on the margins of the audit, over the objections of the defendant, was prejudicial to the rights of the defendant."

In the Otey Case, supra, the audit had been made by the state examiner and inspector, and, after having been filed in his office, was a public record. If the letter of transmittal and marginal notations of an audit made by a public official were inadmissible, it would follow as a matter of course that the letter of transmission and marginal notations on an audit made by a private individual would be inadmissible, and the admission of the same would be prejudicial to the substantial rights of the defendant. The summary of an audit made by a private individual or company can never be made primary evidence. In the case at bar the state should have had the books and records of the city of Ada pertinent to the issue identified as public records and offered them in evidence or had them in the courtroom available for court and counsel. The state then should have had the books and records of

the banks with which the defendant had his account properly identified by some officer of the bank, as the books and records of the bank required to be kept by law and the entries therein made in the due course of business. Phillips v. U. S., 201 F. 259, 120 C. C. A. 149; Hollingsworth v. State, 111 Ind. 289, 12 N. E. 490; People v. Miles, 123 App. Div. 862, 108 N. Y. S. 510; Ford v. State, 30 Ohio Cir. Ct. R. 592; Busby v. State, 51 Tex. Cr. 289, 103 S. W. 638; Ruth v. State, 140 Wis. 373, 122 N. W. 733.

The witness, Miller, could then have been examined as to his qualifications as a public accountant, and, when he had qualified, he could have been asked if he had made an audit of the books and records offered in evidence to ascertain the amount of money received and disbursed by the defendant in his official capacity. Answering in the affirmative, he then could have testified he had made a summary of the receipts and disbursements of the defendant for the various years and of the various departments under the control of the defendant as such commission of accounting and finance and ex officio treasurer, and could have testified that such summary showed a shortage in the defendant's account of $10,268.83. The summary without marginal notations or comments could then have been offered in evidence under the rule laid down in 16 C. J., supra. Under no circumstances could the audit in its present form be offered as primary evidence, and the admission of the same was prejudicial error.

The defendant complains of numerous other errors, but the conclusion we have reached renders it unnecessary to pass upon them. For the reasons stated, the cause is reversed and remanded, with instructions to proceed with the trial of the case according to law.

EDWARDS, P. J., and DAVENPORT, J., concur.