CARL EUGENE DUNCAN et al. v. STATE.

No. A-10986.   June 15, 1949.

(207 P. 2d 324.)

326

Logan, Cummins & Oerke, of Lawton, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, J. The defendants, Carl Eugene Duncan, Emil L. Crowell, Sam Agrista, Perry Pugh, and Vernon Joe Loveall were charged, tried and convicted by a jury in Comanche county, Okla., of the crime of robbery with firearms, of W. G. Snell and Delbert Smith, of the sum of $4,960, both of whom were engaged in operating a gambling dive at the time and place of said crime. The jury fixed the punishment at 10 years in the State Penitentiary, judgment and sentence was imposed accordingly, and from said judgment and sentence this appeal was perfected.

The defendants first contend that the trial court erred in overruling their motion to quash and set aside the information for the reason that no legal preliminary examination had been held before a committing magistrate.

The crime was allegedly committed on December 29, 1946. The State Legislature, of which Senator Bill Logan,

counsel, was a member of the upper house, convened on January 7, 1947, and adjourned sine die May 8, 1947.

The record shows the defendants in this case were apprehended on April 16 and 17, 1947, in Los Angeles, Calif. Thereafter Senator Bill Logan was employed to represent defendants Carl Eugene Duncan and Vernon Joe Loveall, and his firm employed to represent the rest of the defendants. The record further shows that the preliminary complaint on which the defendants were charged was filed on May 6, 1947, in the justice of the peace court of Justice John Manning, sitting as magistrate. The case was called for hearing on arraignment on May 7, 1947. Mr. Cummins, of counsel, requested five days within which to plead, which request was rejected on the ground that the justice of the peace had been informed the state wanted to go to trial at the next term of district court which would begin in 12 days. Whereupon, the justice of the peace granted 24 hours in which to plead, and the case was continued to May 8, 1947. On May 8, 1947, the case was called for arraignment of the defendants. Mr. Cummins, of counsel, by sworn affidavit requested a continuance alleging among other things:

"* * * That the law partner and attorney interested in this case is a State Senator of the State of Oklahoma, and that his presence in the preliminary hearing in this case is necessary and vital to the defense of the defendants, and that as such State Senator, he is engaged in the legislative session of the State of Oklahoma, and that thereby and according to law, these defendants can not be tried without error being committed by this Court. * * * That this application is not made for delay, but that substantial justice may be done and that defendants ask that the cause be continued until May 23, 1947."

Mr. Cummins informed the justice of the peace he could produce testimony in relation to the employment of Senator Logan in the case. This the justice of the peace rejected and said: "Well, I am going to overrule your motion", to which ruling the defendants excepted. Whereupon the defendants were given an immediate hearing and bound over to the district court without bail on the charge of robbery with firearms. Thereafter on May 13, 1947, an information was filed in the district court, and said case was set for trial May 28, 1947. On May 15, 1947, the defendants filed a motion to quash the information, alleging among other things the following to wit:

"Comes now the defendants and move the court to quash the information in the above entitled cause by reason of the fact that at the time of the preliminary hearing in said cause that Bill Logan, a member of the firm of Logan, Cummins & Oerke, Attorneys for the defendants, was absent, in attendance of his duties as a member of the Oklahoma State Senate, and that at said time the Legislature of the State of Oklahoma was in session; that the employment of said firm by Carl Eugene Duncan and Vernon Joe Loveall was conditioned upon the personal appearance and representation in their behalf of the said Bill Logan, and that even though an affidavit for continuance was filed before the Magistrate in the preliminary examination, that the Magistrate wholly failed and refused to allow a continuance by reason of the absence of the said Bill Logan in the State Legislature, that therefore these defendants have been denied their statutory rights and the said attorney, Bill Logan, was denied an opportunity to appear in behalf of his clients, the said defendants, at the preliminary examination, and that the preliminary examination was therefore illegal and erroneous, and that the rights of these defendants have been substantially defeated in respect thereto."

In this connection it should be observed that the employment of Senator Logan conditioned upon his personal appearance and representation was limited to defendants Carl Eugene Duncan and Vernon Joe Loveall.

In the order overruling the motion to quash as to these two defendants the trial court conceded the following, to wit:

"The Court knows that Senator Logan was in the Legislature at the time of the preliminary hearing here; and the Court also knows that a continuance was asked by the defendants on the ground that Senator Logan was absent. The Court has knowledge of the fact from the statements of Senator Logan and Mr. Cummins that Mr. Logan is a member of defense counsel in this case, and was at the time of the preliminary hearing. However, this Court feels that no error was done at the preliminary hearing by reason of the absence of Senator Logan, although objections were made and exceptions were taken at the time in the preliminary hearing, and for that reason the Court feels that the information should not be quashed by reason of the absence of Senator Logan. The Motion to Quash the Information will be overruled."

We might also observe that in the motion for new trial an attempt was made to broaden the scope of the foregoing contention as to Senator Logan's employment by Carl Eugene Duncan and Vernon Joe Loveall to include all of the defendants. We do not believe such broadening would be permissible under the foregoing limitation, imposed by Senator Logan himself, and the limitation contained in the defendant's brief as follows, to wit:

"This proposition is based on the fact that Bill Logan of Lawton, Okla., a duly elected and qualified member of the State Senate of the State of Oklahoma, was employed by some of the defendants in this case while the Legislature was in session."

Moreover, it would be grossly unfair to charge the trial court with error, as to a contention never made by defendants Crowell, Agrista and Pugh during the trial of the case, and for which no proper predicate was laid by them.

The foregoing facts lead to the following conclusions: The justice of the peace acted arbitrarily in not hearing the defendants' evidence as to the employment of Senator Logan. It was error for him so to do. The district court likewise was in error in assuming that he had all the facts essential to a ruling on the matter, which the record reveals he did not have. Apparently they were too eager to aid the prosecution in obtaining a speedy trial which certainly was accorded the defendants in these proceedings. Ordinarily no complaint can be lodged relative to such endeavor, but even the right to a speedy trial must be sustained with due regard to the other rights to which the defendants might be entitled under the law. Had the justice of the peace and the district court not acted with such great haste, and had they afforded Mr. Cummins and Senator Logan an opportunity to present their evidence relative to Senator Logan's employment, that evidence would have disclosed that Senator Logan had for a long period of time been the regular attorney for the family of Carl Eugene Duncan, one of the defendants represented by him. Moreover, it would have disclosed that within the preceding year Senator Logan had successfully tried two district court civil actions for Carl Eugene Duncan's sisters, one before a jury and one before the court. Furthermore, in relation to the case at bar, one of Carl Eugene Duncan's sisters, who had formerly been represented by Senator Logan, wired her brother from California after he was brought to Lawton, Okla., specifically recommending that he employ Senator Logan

to defend him, which he subsequently did, as well as did the defendant Vernon Joe Loveall. It appears from the record that had this evidence been heard, it would have disclosed that the employment of Senator Logan was predicated upon his personal representation of the two defendants Duncan and Loveall. The foregoing constitutes the basic facts and conclusions for the consideration of the contention of the defendants Duncan and Loveall. Said contention clearly does not apply as to the other three defendants.

It is fundamental in criminal law that a defendant is entitled to aid of counsel of his own choice, when able to employ one, and if not it is the duty of the court to appoint one for him. If he is able to employ counsel the choice is a personal right of which he cannot be deprived by arbitrary action. It is ordinarily secured to him by express constitutional and statutory provisions. Moreover, the right to be represented by counsel of his own choice is a valuable one, the denial of which is held to be fundamental error. 64 C. J. § 246. In Lotta v. State, 30 Okla. Cr. 105, 235 P. 245, this court held that the trial court's action in refusing to continue the case because of the temporary absence of defendant's counsel, and in appointing counsel to represent the defendant, was reversible error. It has been held, in felony cases, that this right is not limited to the trial alone but extends to every stage of the proceeding. Polk v. State, 26 Okla. Cr. 283, 224 P. 194; Sutton v. State, 35 Okla. Cr. 263, 250 P. 930; Brown v. State, 39 Okla. Cr. 406, 266 P. 476. The foregoing conclusion is all the more apparent in light of the provisions of the Bill of Rights of the Constitution, Art. II, § 20, reading in part as follows, to wit:

"In all criminal prosecutions the accused * * * shall have the right to be heard by himself and counsel; * * *."

Moreover, under the provisions of Title 22 O.S.A. 1941 § 251, reading in part as follows, to wit:

"When the defendant is brought before a magistrate upon an arrest, * * * the magistrate must immediately inform him * * * of his right to the aid of counsel in every stage of the proceedings, and also of his right to waive an examination before any further proceedings are had."

Furthermore, the right to counsel of the defendant's choice is made apparent by Title 22 O.S.A. 1941 § 252, reading in part as follows, to wit:

"He must also allow to the defendant a reasonable time to send for counsel, and adjourn the examination for that purpose; and must, upon the request of the defendant, require a peace officer to take a message to such counsel in the county or city as the defendant may name. The officer must, without delay, perform that duty, and shall receive fees therefor as upon a service of a subpoena: * * *."

Moreover, under the provisions of Title 12 O.S.A. 1941 § 667, "The court may, for good cause shown, continue an action at any stage of the proceedings upon terms as may be just;" such as when the attorney for the accused is sick, Gilroy v. State, 64 Okla. Cr. 332, 80 P. 2d 602. But this statute does not stop there. It further provides:

"* * * Provided, that if a party or his attorney of record is serving as a member of the Legislature or the Senate, sitting as a court of impeachment, or within thirty (30) days after an adjournment of a session of the Legislature, such fact shall constitute cause for continuance of the case, and all motions, demurrers and preliminary matters to be heard by the court, the refusal

to grant which shall constitute error, and entitle such party to a new trial as a matter of right."

In construing the foregoing section of the statute this court has held that if the employment of defendant's counsel is before the House or Senate of the Legislature convenes and the case is called in any proceeding during the session while defendant's counsel is in attendance thereon, the defendant is entitled to a continuance as a matter of right. Greer v. State, 73 Okla. Cr. 345, 121 P. 2d 329; Fitzgerald v. State, 65 Okla. Cr. 1, 83 P. 2d 581; Gilroy v. State, supra; Bell v. State, 63 Okla. Cr. 424, 75 P. 2d 1157; Johnson v. State, 45 Okla. Cr. 384, 283 P. 590; Otey v. State, 39 Okla. Cr. 61, 263 P. 155. And it is error to overrule the motion for continuance under such conditions. But where the accused employs an attorney to represent him in a case, after the Legislature has convened, it has been held he is not entitled to a continuance as a matter of right. Gilroy v. State, supra; Jackson v. State, 77 Okla. Cr. 160, 140 P. 2d 606; Key v. State, 69 Okla. Cr. 71, 100 P. 2d 291; Holloway v. State, 37 Okla. Cr. 24, 255 P. 1022, 1023. But as was said in the Gilroy and Jackson cases, supra, under the latter conditions the matter of a continuance is addressed to the sound discretion of the court passing upon the question. It is error to abuse this discretion. Here as to the defendants Duncan and Loveall represented by Senator Bill Logan, the justice of the peace refused to listen to the facts upon which to predicate the exercise of discretion. The trial court likewise drew his conclusions from his personal knowledge of the Senator's service in the State Senate alone. Neither the justice of the peace nor the trial judge sought factual information concerning the time and conditions of the Senator's employment, which were decisive facts upon which to reach a conclusion. Had either of them so inquired in light

of the authorities, the statutes, and the Constitution, we are sure a correct conclusion would have been reached. In the trial of a criminal case, an exercise of sound discretion should be predicated upon facts adduced in the proceedings, and not on surmise, conjecture, presumption or an arbitrary exercise of power. Under the facts herein involved the refusal to hear the evidence or to take evidence, in face of the pleadings herein, and grant a continuance as to defendants Duncan and Loveall clearly constitutes reversible error. This reasoning does not apply to the other defendants represented by the firm of Logan, Cummins & Oerke, since their employment was not personal to them and Senator Logan, while the employment of Senator Logan by Duncan and Loveall as revealed by the record, was, and the benefits thereof would be predicated solely upon the time of employment, and the conditions thereof, which the firm as such could not claim. The reason for the statute and the construction placed thereon by the authorities hereinbefore cited is clearly stated in Holloway v. State, supra:

"The purpose of this statute was, no doubt, to encourage members of the bar to become candidates for the lawmaking body of the state, and to protect a defendant whose attorney, presumably familiar with his case, could not attend his trial by reason of official duty, and to protect members in their business while serving the state in this capacity by preventing trials of cases where they are attorneys of record during a session of the Legislature and for 10 days thereafter [now thirty days]; that during this time they should not be disturbed in their duties as lawmakers. The privilege of a continuance as a matter of right applies only to a defendant whose attorney of record is a member of the Legislature. A member of the Legislature, during a session of the Legislature, also has the right to contract for any new business presented to him, and, if such business arises during a session

of the Legislature, and he is employed he would then be entitled to the benefits conferred by this statute."

From an analysis of the foregoing cases, it appears that, if such employment is bona fide, as herein appears, and is not for the purpose of delay only, § 667, Title 12 O.S.A. 1941, of the statute is binding on the courts, and not to grant a continuance under such conditions constitutes ground for reversal and requires a reversal of the case. Under the provisions of Title 22 O.S.A. 1941 § 1066, this court may reverse, affirm or modify judgments of conviction. It has been held that the appellate court may reverse a judgment of a lower court as to part and affirm as to part, where the legal part is severable from that which is illegal. 24 C.J.S., Criminal Law, § 1949(b); De Jianne v. United States, 3 Cir., 282 F. 737; People v. Dillon, 68 Cal. App. 457, 229 P. 974; State v. Fasano, 119 Conn. 455, 177 A. 376; Wells v. State, 75 Ga. App. 588, 44 S. E. 2d 66. Here the error as to Duncan and Loveall being peculiarly personal to them is severable and cannot be availed of by defendants Crowell, Agrista and Pugh. It has also been held that a judgment upon a joint indictment and trial may be reversed as to one or more and affirmed as to the other defendants. 24 C.J.S., Criminal Law, § 1949(b); Antone v. State, 76 Fla. 234, 79 So. 714; Floyd v. State, 54 Ga. App. 254, 187 S.E. 682; United States v. Bates, 7 Cir., 141 F. 2d 436, 148 F. 2d 907; Bartlett v. United States, 10 Cir., 166 F. 2d 920. For all the foregoing reasons the judgment and sentence as to defendants Duncan and Loveall solely, without regard to the other alleged errors herein involved, must be reversed and remanded for a new trial.

The next proposition relates to alleged error committed by the trial court in refusing to sustain defendants' motion for mistrial because of certain statements made by the county attorney in his opening statement to the jury. The first of these statements made is as follows, to wit:

"The evidence will further show that the defendant Carl Eugene Duncan was the first defendant arrested in the City of Los Angeles, California. That upon his arrest, the arresting officers in Los Angeles, California, Walter Stewart and Howard Smith, told him the nature of that arrest, having had a warrant from Oklahoma for such purpose, and asked him if he desired to make any statement about the Oklahoma job, and he was reluctant to make him such statement, and the only one he made then or at any time since was to the effect, replying to Mr. Smith's question. Mr. Smith told him he was a police officer in California and that he told him he won a gun in a dice game or crap game in Lawton, and Mr. Duncan gave them the nature and kind of gun used. Now, that is the only admission on his part. * * *" ·

No objection was made and no exception saved to the foregoing statement. In Scott v. State, 59 Okla. Cr. 231, 57 P. 2d 639, 640, this court said:

"Ordinarily, error cannot be predicated upon the opening statement of a prosecuting attorney to the jury, specifically stating what facts he expects to develop in testimony, where later, for some reason, he fails to introduce evidence to support some of the narrative related in the opening statement, unless such unsupported portions of the opening statement were made in bad faith and were manifestly prejudicial."

In the absence of evidence of bad faith in making the hereinbefore complained of statement, which is totally lacking in this record, and because of the manifest lack of prejudice when viewed in light of the entire record, this contention is not meritorious.

Under this same contention defendants urge that the county attorney committed error in his opening statement by beginning to detail to the jury certain facts contained in the written confession of the defendants Perry Pugh and Sam Argista before the voluntary nature of said confessions had been established and said confessions admitted in evidence. It was improper for the county attorney so to do; and the defendants objected and excepted. The court overruled this objection but admonished the county attorney not to disclose the contents of the statements, and further admonished the jury that any such confession as might be admitted, if such was admitted, would be binding only as against the defendant who made the statement and could be considered only as evidence against such defendant. The record further discloses, however, that subsequent thereto the court heard the evidence in relation to the confessions and found them to be voluntary and admitted the same in evidence. Under these conditions such procedure cannot be error as was said in Foster v. State, 79 Okla. Cr. 183, 152 P. 2d 929, 932, which reads as follows:

"The only error revealed by the record in this case is that of the assistant county attorney in his opening statement in making reference to the statement made by the defendant. Objection was made thereto, and the court overruled the objection and permitted the assistant county attorney to state to the jury what the written statemen contained. This was improper, for the reason that the court at that time had not had the opportunity to hear the evidence and determine the question as a matter of law whether the statement was a voluntary or an involuntary one. If the court, after hearing the evidence, had determined as a matter of law that the statement was an involuntary one, and therefore inadmissible, this would have been a very serious error; but the court having found that the statement was voluntarily made, and the jury having been permitted to hear the statement

read, we are of the opinion that this was not reversible error."

We believe the foregoing authority is clearly in point, and controlling herein. As indicated in the Foster case, supra, if upon hearing the evidence in relation to the confession the court had found the said confession was involuntary and inadmissible, the statement of the county attorney would have constituted error, but since the record reveals that the confessions were voluntarily made and their admissibility was limited only to defendants Agrista and Pugh, the other defendants cannot complain relative thereto and their admissions under the conditions herein involved did not constitute reversible error.

The next proposition relates to alleged error committed by the state introducing testimony in two instances wherein the good character of the defendants or two of them was put in issue by the state without the character of said defendants having been placed in issue by the defendants or either of them. This contention is predicated upon the testimony of the arresting officers, Walter R. Stewart and Howard Smith, members of the Police Department in Los Angeles, Calif. These two officers arrested Perry Pugh and Sam Agrista. Stewart testified that when he advised Perry Pugh of his constitutional rights and the fact that he did not have to make any statement as it might be used against him in the trial of the case, the defendant told him that he knew that. When asked how he knew it, he testified he said "I have been on trial before". In connection herewith the court admonished the jury:

"The Court: Gentlemen: You heard the remark that was just made here, and I want to admonish the jury that that will not be considered by you gentlemen for any purpose at all, and I would like for you to remove that from

your minds, and it is no testimony whatever so far as these defendants are concerned."

To this evidence the defendants moved for a mistrial, which was overruled. In the recent case of Tucker v. State, 89 Okla. Cr. 30, 204 P. 2d 540, 543, where it appeared a peace officer in testifying for the state improperly made a voluntary statement, we said "this court has repeatedly condemned the practice of experienced peace officers while on the witness stand making voluntary statements prejudicial to the rights of the defendant on trial." Therein we cited Wire v. State, 87 Okla. Cr. 44, 194 P. 2d 212; Harris v. State, 88 Okla. Cr. 422, 204 P. 2d 305; Holleman v. State, 74 Okla. Cr. 258, 125 P. 2d 239, 240. In the Tucker case we modified the judgment and sentence because of such prejudicial conduct from 25 to a term of 15 years. But all these cases were all predicated upon the basis of prejudice. Under the circumstances herein involved the defendant cannot complain that the voluntary statement of the officer resulted in his prejudice in view of the fact that he later took the witness stand and testified in his own behalf and his own counsel disclosed the fact that he had been convicted of a felony, to wit, larceny, and sentenced to five years in the penitentiary in the state of Iowa. Furthermore, the record affords clear and convincing proof of his guilt, not only by confession but his identification is beyond doubt of his participation in this robbery with firearms. Moreover, the maximum penalty in cases of this character is by punishment by death. Herein the defendants only received a sentence of 10 years. Where prejudice is shown this court will reverse the case because of the admission of voluntary statements by peace officers into the record. Under these conditions we do not believe the defendant Pugh can complain of prejudice. Certainly the contention that the defendants were

prejudiced by the voluntary statement of the officer in this case is without merit.

Under this same contention, Officer Howard Smith related a conversation he had with Agrista while he was likewise in custody of the police officers in Los Angeles, Calif., and when called upon to relate what voluntary statement Agrista made, the officer testified as follows:

"A. The first statement he made voluntarily, that he had spent 10 years in the Massachusetts penitentiary for robbery".

Whereupon the defendants moved for a mistrial for the reason that the statement made by Officer Smith was an attempt to show previous bad character on the part of defendant Agrista when he had not placed his character in issue. The court overruled the motion for mistrial, granted an exception, and admonished the jury in language as follows, to wit:

"The Court: Gentlemen, you heard the remark that was just made here, and I want to admonish the jury that that will not be considered by you gentlemen for any purpose at all, and I would like for you to remove that from your minds, and it is no testimony whatever so far as these defendants are concerned."

Under the foregoing admonition of the trial court, and when viewed in light of his signed confession, positive identification by the victims of the robbery with firearms W. G. Snell, Delbert Smith, Buck White and Coy Dennis, and other evidence clearly establishing the guilt of the defendants herein, this contention relative to Sam Agrista is without merit, particularly when viewed in light of the authorities relied on by the state in this connection. In Holleman v. State, supra, this court said:

"Where the character or reputation of the accused is not an element of the crime charged, the prosecution

cannot put it in issue by offering evidence of his bad character, unless the defendant first offers evidence of his good character. The prosecution may then rebut it by evidence of bad character.

"Where a witness voluntarily states a matter which should not be introduced in evidence and the court promptly excludes the testimony given by the witness and instructs the jury not to consider it in their deliberation, such voluntary testimony of the witness, although improper, will not ordinarily be ground for the reversal of a conviction."

See, also, Thompson v. State, 6 Okla. Cr. 50, 117 P. 216. Under the conditions herein involved this contention advanced by the defendants is without merit.

The next contention of the defendants is that the court erred in allowing evidence of extradition to be received over the objections of the defendants, which evidence could only be used to create bias and prejudice by the jury against the defendants. This contention is predicated upon testimony offered by Officer Stewart of the Los Angeles Police Department, to the effect that defendants Sam Agrista and Perry Pugh waived extradition to come back to Oklahoma, and to which his answer was "they did". The record does not disclose an objection to the foregoing testimony in relation thereto and the same therefore cannot be made the basis for objection on appeal. Then the question was propounded by the state. "Q. And did Duncan and Crowell fight extradition?" to which an objection was interposed and the objection sustained. Under these conditions this contention is wholly without merit.

The next contention of the defendants is that there was not sufficient independent evidence to substantiate the verdict and judgment of the court as to all the defendants. The evidence in this case conclusively shows

the participation in the robbery with firearms of all the defendants. Briefly, it discloses that defendants Duncan, Crowell, Agrista and Pugh were induced to come from Los Angeles, Calif., to Oklahoma, by defendant Vernon Joe Loveall who resided in Medicine Park, Okla., near Lawton, Okla., for the purpose of committing the armed robbery of a gambling institution operated by W. G. Snell. The defendants Duncan and Crowell were positively identified by the victims as the men who held the guns. Defendants Agrista and Pugh were identified as the men who removed the $4,960 from the persons of W. G. Snell and Delbert Smith and took a small sum of money from defendant Loveall. The record positively proves that defendant Loveall procured from the Wide-awake Pawnshop in Lawton, Okla., a .32 nickel plated automatic pistol which was used in the robbery. Moreover, the record further discloses that defendant Loveall contacted defendant Pugh by letter and telephone relative to his cut of the proceeds taken in the robbery. The record is full, complete and conclusive as to the guilt of all the defendants, and this contention is wholly without merit. Bearing upon this contention the evidence is conflicting and this court has repeatedly held that it will not reverse a conviction upon the ground that the evidence is insufficient to sustain the same, unless there is no testimony in the record from which the jury could reasonably conclude that the defendant was guilty. Sweat v. State, 69 Okla. Cr. 229, 101 P. 2d 648. And where the evidence is conflicting and different inferences may be drawn therefrom, it is the province of the jury to weigh the same and determine the facts, and though the evidence is conflicting but substantial, the Criminal Court of Appeals will not reverse the same on the ground of insufficiency. Chapman v. State, 84 Okla. Cr. 41, 178 P. 2d 638. To the

same effect is Butler v. State, 87 Okla. Cr. 369, 198 P. 2d 221.

The next contention of the defendants is that the court erred in allowing evidence to be presented to the jury which showed that certain pieces of evidence were received by unlawful search and seizure, particularly a letter which was written subsequent to the date of the alleged crime and which it was further contended was not admissible as being part of the conspiracy. This objection is predicated upon the proposition that when Perry Pugh was arrested in Los Angeles and questioned concerning the robbery at Lawton, he disclosed to the officers that he had received a letter from Vernon Joe Loveall and informed the officers that if they would take him to his room he would find the letter and let them have it. He took them to his room and removed the letter from a furnace vent in his room. This letter was offered in evidence, objected to, objection overruled and exception allowed. The handwriting expert Mr. D. C. Patterson testified that the signature attached to the letter of Vernon Joe Loveall was identical with the signature appearing on the certificate of purchase signed by Vernon Joe Loveall at the time he purchased the .32 nickel plated automatic pistol which was used by the defendants in perpetrating the robbery herein complained of. Mr. Clyde Moore, owner of the pawnshop in Lawton, had testified that Loveall signed this certificate of purchase in his presence. The record discloses in this connection that Pugh gave his voluntary consent to the search, and as a matter of fact took the officer to his room and delivered the letter to him without the necessity of a search warrant. Goad v. State, 60 Okla. Cr. 307, 64 P. 2d 932, 933, wherein it was held:

"It is an invasion of the constitutional right of any person to search the residence and immediate premises without a valid search warrant, but this right may be waived by the voluntary consent of the person whose premises are searched, and, when voluntary consent is given, evidence obtained by such search is admissible."

See, also, Camp v. State, 70 Okla. Cr. 68, 104 P. 2d 572. Clearly as to defendant Pugh this objection is without merit, and certainly it would be without merit as to the other defendants. As was said in Downey v. State, 55 Okla. Cr. 131, 26 P. 2d 152:

"This court in numerous cases has said:

" 'Immunity from prejudicial consequences of an illegal search and seizure is a personal one, and does not extend to an unauthorized search of the premises of another.' Hardy v. State, 35 Okla. Cr. 124, 248 P. 874; Williams v. State, 35 Okla. Cr. 171, 249 P. 433; Klaber et al. v. State, 35 Okla. Cr. 238, 250 P. 142; Penrod v. State, 38 Okla. Cr. 46, 258 P. 1052."

See Ellige v. State, 39 Okla. Cr. 262, 264 P. 220; Boardwine v. State, 64 Okla. Cr. 49, 76 P. 2d 1081; Fitzgerald v. State, supra. The trial court limited the evidentiary effects of the Loveall letter sent to Perry Pugh to the defendants Pugh and Loveall. Having been admitted on this basis their codefendants could not complain. But, it is further contended by the defendants that the letter was not admissible in evidence because it was written subsequent to the alleged robbery and that the conspiracy involving the same had terminated. This contention is wholly without merit since the letter was in effect an admission or confession of Loveall as to his guilt in the robbery. Moreover, the conspiracy had not terminated because he had not received his cut in the proceeds of the robbery and the objective of the conspiracy would not terminate until he had received his part.

Certainly the letter was admissible as to Pugh and to Loveall, and their codefendants cannot complain as to its admission in evidence. In this conclusion we are sustained by Ford v. State, 5 Okla. Cr. 240, 114 P. 273, wherein this court said:

"(a)   A confession or admission of one defendant upon a joint criminal charge with another, voluntarily made, when properly proven, is admissible in evidence as against him upon trial. The prejudice resulting to the joint defendant from such admission or confession is an unavoidable evil necessarily incident to their joint trial.

"(b)   When two persons are jointly on trial and admissions of one of them are offered in evidence, it is the duty of the court to limit, by proper admonition and instructions, the effect of the admissions, to the person making them."

To the same effect is Gonzalus v. State, 7 Okla. Cr. 444, 123 P. 705. Under the conditions hereinbefore set forth and the authorities of this court this contention of the defendants is likewise without merit.

The next contention of the defendant goes to the proposition that the court committed error in not permitting the defendants to show the facts and circumstances surrounding the making of the confession of Perry Pugh, and the court's failure to sustain the motion to suppress the confession and is predicated upon the testimony of George Fly, a newspaper reporter, creating an indication by virtue of an article which he wrote for a daily paper in Lawton, that possibly Pugh may have made his confession by virtue of a promise of leniency. The evidence of George Fly, taken in the absence of the jury, is of a most unsubstantial nature as revealed by the following testimony:

"By the Court: Q. Did the county attorney at any time during the conversation with you tell you that he

had promised Perry Pugh in this case immunity? A. He made no such statement."

The testimony of Mrs. Maxine Preston clearly establishes the voluntary nature of the confession of Perry Pugh as well as the confession of Sam Agrista. At the very most, this contention is predicated upon inferences drawn by the reporter from his conversation with the county attorney, in face of the foregoing positive testimony. To support such a contention the evidence must be substantial, clear and convincing. The trial court did not abuse his discretion in refusing to sustain the motion to suppress the Pugh confession on the basis of this evidence. Furthermore, the confession of Perry Pugh, as well as the confession of Sam Agrista not involved in this contention, recites that they made their confessions freely and voluntarily, without duress or promise of immunity from prosecution. This contention is therefore in our opinion without merit.

The next proposition urged by the defendant goes to the proposition that the court erred in overruling the defendants' motion for a new trial and amended motion for a new trial predicated upon newly discovered evidence. This contention is supported by the affidavit of Mrs. Julia Bolton, of Los Angeles, Calif. Her affidavit presents the facts which would be supported by her testimony, and goes to the manner in which the officers procured the letter as written by Vernon Joe Loveall to Perry Pugh and offered in evidence against them. It is merely contradictory of the sworn evidence of Officers Stewart and Smith in relation to the procurement of the letter from Loveall to Pugh about his cut of the proceeds from the robbery. Her testimony would throw no light whatsoever upon the merits of the case. It would not tend to establish the innocence of the defend-

ants. It goes only to a collateral matter. Such matter is addressed to the trial court's sound discretion. In Parkey v. State, 59 Okla. Cr. 45, 56 P. 2d 144, 145, it was said:

"A motion for new trial upon the ground of newly discovered evidence is addressed to the trial court's discretion, and its ruling thereon will not be disturbed on appeal except for an abuse of discretion; * *."

In view of the positive identification of the defendants, the confession of Pugh, and the clear and convincing evidence of his guilt, the court did not abuse its discretion in denying the motion for a new trial on the ground of newly discovered evidence which was sought to be offered in the affidavit of Mrs. Julia Bolton.

In light of the entire record and the foregoing authorities, we are convinced the defendants Perry Pugh, Sam Agrista and Emil L. Crowell were not prejudiced in their constitutional or statutory rights, but to the contrary were accorded a fair and impartial trial, and as to these defendants the judgment and sentence of the lower court is affirmed. As hereinbefore indicated the defendants Duncan and Loveall were prejudiced in their constitutional, statutory and fundamental right to be represented at every stage of the proceeding by counsel of their own choice, and for that reason as to defendants Duncan and Loveall the judgment and sentence is hereby reversed and remanded for a new trial.

JONES, P. J., and BAREFOOT, J., concur.