Patrick Adam **THOMAS**, Appellant,

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17006.**

Court of Criminal Appeals of Oklahoma.

Oct. 11, 1972.

Harold K. Haxton, Woodward, for appellant.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., for appellee.

OPINION

BRETT, Judge.

Appellant, Patrick Adam Thomas, hereinafter referred to as defendant, was convicted in the District Court of Woodward County, Case No. CRF 70–40, of burglary in the second degree, and sentenced to two years imprisonment. Judgment and sentence was imposed on May 19, 1971, and this appeal perfected therefrom.

On appeal it is defendant's contention that the conviction was obtained by the admission of incriminating evidence seized from defendant's residence during an unlawful search, prohibited by the Fourth Amendment of the United States Constitution and the Oklahoma Constitution, Article II, § 30. As we see it the critical issue is whether there was a warrantless search made pursuant to a voluntary consent by the defendant.

It was charged by information that the defendant, on October 11, 1970, did break and enter the Mead Jewelry Store in Woodward, Oklahoma, by breaking open a

window and entering the premises without the consent of the owner with the intent to steal property therefrom. The evidence established that on October 11, 1970, at approximately 2:45 A.M., Ralph Lynn Smith, upon hearing the sound of glass breaking, looked out his window and saw a man get into a 1962, yellow Chevrolet Convertible. Smith notified the police and gave them a description of the vehicle. The police then took Smith to 711 Maple Avenue in Woodward, where he identified a parked car as the one he saw speed away from the location of the Mead Jewelry Store. The District Attorney then secured a search warrant for the vehicle, and served a warrant on Mrs. Kenneth Webb, mother of the defendant, at 711 Maple Avenue. The police found nothing in the vehicle and then returned to the residence and asked Mrs. Webb if they could question her son, the defendant. Mrs. Webb took the officers to the defendant's bedroom where he was awakened. After some questioning, Mrs. Webb and the defendant signed a paper written out by the officer giving them permission to search the premises. The officers then discovered items taken from the burglarized jewelry store.

In construing the Fourth Amendment's prohibition against unreasonable search and seizure, the court in Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649, 650 (1951), held:

"Searches and seizures made without a proper warrant are generally to be regarded as unreasonable and violative of the Fourth Amendment. True, the obtaining of a warrant may on occasion be waived by the individual; he may give his consent to search and seizure. But such a waiver or consent must be proved by clear and positive testimony, and it must be established that there was no duress or coercion, actual or implied. . . . The Government must show a consent that it 'unequivocal and specific' . . ., 'freely and intelligently given.' . . . Thus 'invitations' to enter one's house, extended to armed officers of the law who demand entrance, are usually to be considered as invitations secured by force. . . . A like view has been taken where an officer displays his badge and declares that he has come to make a search . . ., even where the householder replies 'All right. . . . Intimidation and duress are almost necessarily implicit in such situations; if the Government alleges their absence, it has the burden of convincing the court that they are in fact absent."

As to the factors to be considered in determining the validity of a consent, United States v. Lewis, 274 F.Supp. 184 (S.D.N.Y.1967), states as follows:

"Among the factors that may be considered in determining the effectiveness and validity of a consent to search are whether at the time when it was given the defendant was under arrest . . .; whether he was overpowered by arresting officers, handcuffed, or similarly subject to physical restrictions . . .; whether the keys to the premises searched had already been seized by the police from the defendant . . .; whether the defendant employed evasive conduct or attempted to mislead the police . . .; and whether he denied guilt or the presence of any incriminatory objects in his premises. . . ."

In considering the Oklahoma Constitutional prohibition against unreasonable searches, this Court has held that "It is an invasion of the constitutional right of any person to search the residence and immediate premises without a valid search warrant, but this right may be waived by the voluntary consent of the person whose premises are searched, and, when voluntary consent is given, evidence obtained by such search is admissible." Duncan v. State, 89 Okl.Cr. 325, 207 P.2d 324, 327 (1949). "It is fundamental that a waiver must be proved by the party alleging it, and such proof must be clear and convincing, that the waiver was a free and voluntary act." Hogan v. State, 94 Okl.Cr. 375, 236 P.2d 276 (1951). "Where search of an automo-

bile or premises is made without a search warrant, and the state contends the search was predicated upon the waiver, the test is, was permission to conduct the search asked and granted freely and voluntarily, or, to the contrary, was the approach and search effected in the nature of an arbitrary display and exercise of authority by the officer or officers making the search." Burns v. State, Okl.Cr., 282 P.2d 258 (1955).

According to Officer Wellman, he served Mrs. Webb with a search warrant for the Chevrolet parked in front of the residence at 711 Maple Avenue. After searching the car and finding no evidence, Officer Wellman returned to the residence and asked Mrs. Webb if he "could be received into the house to speak with her." According to Officer Wellman, "she invited me into the house along with two other officers." In reply to the officer's inquiry, Mrs. Webb stated that the Chevrolet belonged to her and her husband, but that her son, the defendant, had been driving it. The officer then asked if he could speak with the defendant. Mrs. Webb lead the officers to the defendant's bedroom where he was awakened. While talking with the defendant Officer Wellman noticed a laceration on defendant's hand and then inquired if he could search the premises. According to Officer Wellman, he advised Mrs. Webb that she didn't have to let him search her home, and that she replied she had nothing to hide. According to Officer Wellman, defendant was in the room at this time and made no comment. On a piece of paper the officer then wrote out a consent to search the premises which was signed by Mrs. Webb and the defendant. The paper read: "I hereby give consent for Officers of Woodward Police Depart-. ment to search the address at 711 Maple, the home of Mrs. Kenneth Webb." Dated 10–11–70, 6:51 A.M., signed Pat Thomas and Mrs. Kenneth Webb.

Officer Wellman testified that before asking Mrs. Webb and defendant to allow him to search the premises, he had mentioned in the presence of Mrs. Webb and the defendant that he was investigating a break-in. Mrs. Webb testified that Officer Wellman did not disclose the purpose of his visit until after he had searched the premises and discovered the items which were subsequently identified as having been taken from the burglarized jewelry store. Mrs. Webb did not recall that the officers told her she did not have to sign the consent waiver.

Although the determination of whether or not a consent was voluntary and valid is not an easy task, we find that the trial court had before it competent evidence which supported the ruling that the consent was voluntary and valid. Considering the factor is relevant to determining the validity of a search consent listed in United States v. Lewis, supra, we note that at the time defendant signed the consent instrument he was not under arrest, handcuffed, or similarly subjected to physical restrictions. We find that the State sustained its burden to prove by clear and convincing evidence that the waiver was a free and voluntary act. The approach to search was not effected in the nature of an arbitrary display and exercise of authority by the officers making the search. This is not a situation in which the defendant was threatened if he failed to consent to a search which rendered a search invalid in Poe v. Oklahoma City, Okl.Cr., 483 P.2d 1190 (1971). We therefore conclude that the search and seizure was reasonable.

Finding the defendant's single assignment of error to be without merit, we conclude that the judgment and sentence should be and the same is hereby affirmed.

BUSSEY, P. J., concurs in result.