**Rickey Allen FOWLER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–746.**

Court of Criminal Appeals of Oklahoma.

June 30, 1977.

Harold Hall, Ada, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Catherine Gatchell Naifeh, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Rickey Allen Fowler, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Pontotoc County, for the offense of Obtaining a Controlled Drug by Forged Prescription in contravention of the Uniform Control Dangerous Substances Act, 63 O.S.1971, § 2–407. After a trial by jury and a verdict of guilty the defendant was sentenced to five (5) years in the care and custody of the State Department of Corrections. From said judgment and sentence, the defendant has filed this timely appeal.

With the entire jury panel sitting in the back of the courtroom both counsel for the State and counsel for the defendant announced ready for trial. However, at that time, the District Attorney for Pontotoc County, arose and objected to the case being tried by the Special District Judge of that county, who had just then called the case ready for trial. Both counsel were then called to chambers where a conference was held out of the hearing of the jury, after which the case was tried before the District Judge of Pontotoc County. Just prior to impanelling the twelve jurors to try the matter, a conversation took place between the District Attorney and the trial Judge concerning the objection of the District Attorney to the matter being tried by the Special District Judge. Following which, the trial court apologized to the jurors for their having heard the argument. The defendant then moved for a mistrial, the State joined in that motion, which was overruled by the trial court. (Tr. 6–7). The trial court then proceeded to voir dire the jury concerning whether or not the argument mentioned above might affect their verdict. Each answered in the negative. (Tr. 8).

The first witness on behalf of the State was Trooper John Wayne Smith of the Oklahoma Highway Patrol. He testified that on the 26th day of December, 1975, he had occasion to be in the McCurley-Bayless Drug Store, in the City of Ada. At approximately 3:00 p. m. he observed the defendant, whom he identified, standing at the prescription counter. He observed and overheard a discussion between the defendant and the pharmacist then on duty concerning the whereabouts of a person named in a prescription which the defendant was attempting to fill. In the presence of the defendant, Mr. Johnson, the pharmacist on duty, advised the trooper that the prescription was a forgery. At that time the trooper placed the defendant under arrest and took him to the back of the store where he gave him his Miranda Warnings. During the testimony concerning the Miranda Warnings, the trial court stopped the proceedings, excused the jury and admonished the witness not to volunteer any information, and to simply answer the questions. The jury was then returned to the courtroom at which time the witness testified that after advising the defendant of his Constitutional rights under the Miranda Decision, the defendant stated that the person named on the prescription, a Mr. Lunsford, was simply a friend of his and he did not know where Mr. Lunsford was and that he could not identify Mr. Lunsford.

Cross-examination of this witness concerned the physical layout of the drug store and where each participant was standing at the time of the occurrence.

The next witness for the State was Dr. E. F. Deese, who testified that he was a physician in the City of Ada, Oklahoma. He was shown State's Exhibit No. 1, which was a prescription purportedly made out to a Frank Lunsford, prescribing Desoxyn, a controlled dangerous substance, and purportedly signed by Dr. E. F. Deese. Dr. Deese stated that this was not his signature. To his knowledge, he had no such patient and that while he had no idea how the prescription blank had gotten out of his office, he had authorized no one to use the prescription blank or to sign his name. Dr. Deese then described the drug Desoxyn and stated that it contained a stimulant, to-wit: Dexedrine. Dr. Deese also stated that the dosage called for in the prescription was a very high dosage.

On cross-examination the defense brought out the fact that this drug was often used in weight reduction.

The final witness for the State was Jerry Johnson. Mr. Johnson testified that he was the pharmacist on duty and that he owns the McCurley-Bayless Drug Store in Ada, Oklahoma. He identified State's Exhibit No. 1, as the prescription presented to him by the defendant in this case. He repeated Trooper Smith's testimony that on the 26th day of December, 1975, the defendant approached him and asked him to fill the prescription. Mr. Johnson related how he became suspicious concerning the type and amount of the drug along with the fact that he did not recognize the doctor's signature. He stated that he was familiar with Dr. Deese's signature and it appeared not to be his. He then called Dr. Deese at his office and was informed that the doctor had not written that particular prescription. He then stated that he knew who Trooper Smith was and informed him of what was occurring. He then observed Trooper Smith arrest the defendant. The witness then stated that he initialed the back of the prescription, and gave the same to the trooper.

The witness was then qualified as a graduate registered pharmacist and stated that Desoxyn is a form of Methamphetamine and that same is a controlled dangerous substance.

On cross-examination the pharmacist repeated that the drug was used for weight reduction. The witness was also asked about the physical layout of the pharmacy department.

The chain of custody of State's Exhibit No. 1, the prescription, was then stipulated to and the same was admitted into evidence.

After the State rested, the defendant repeated his motion for mistrial based on the argument which occurred just prior to impanelling the jury. The same was overruled, the defendant demurred which was also overruled. The defendant offered no evidence.

For his first assignment of error the defendant urges that the trial court erred in overruling his motions for mistrial predicated upon the argument which took place between the trial court and the District Attorney in the presence of the jury panel.

With the jury panel seated in the courtroom and after each party having announced ready for trial, the following conversation took place:

"THE COURT: Okay. Does the State have an announcement to make?

Approach the bench.

"MR. POWELL: I just now told him that, and I wish to tell you, too. The State does not waive the right to have a District Judge try the case. There is no agreement between the District Attorney and any judicial official of a waiver of the rights of the District Judge to try a felony case.

"THE COURT: All right. So ordered, and either Judge Jones or Judge Cannon will try this matter. That means I will have to make an announcement to the

- - -

"MR. POWELL: Let's make it in chambers, if you want to.

"THE COURT: Okay. May I see counsel in chambers, please. Wouldyou (sic) ask the bailiff to step in here." (Tr. 2–4).

After a conversation took place in chambers, out of hearing of the jury, the parties returned to the courtroom where the following took place:

"THE COURT: Mr. Powell, I assigned this case for trial before Judge Shi, and you have objected to her trying this case. I presume that you don't think she is capable of trying it, and are you going to undertake the prosecution of this case, yourself, based on the same reason that maybe you are more experienced than your assistants?

"MR. POWELL: While we are making a record. I am Roy Powell, the District Attorney of the 22nd Judicial District, the power of the State of Oklahoma does not authorize the judge to waive a trial judge for the District Attorney and the State of Oklahoma, I am the District

Attorney. I do not waive, on behalf of the people, of the special judge to try this case. That's my prerogative, and you do not have the right to assert my authority. I am the District Attorney, and I will assign the cases to by (sic) tried by my staff as I see fit. I will be present in this court, this morning, and I am going to participate in this trial, because you want to have someone else try the case and not bind the State of Oklahoma as to waiving our rights, and we demand the District Judge try the felony cases as set forth by law.

"THE COURT: I take it that you feel like my discreation (sic) in selecting a judge who is capable to try this case is inadequate, but that you are fully capable of deciding whether your assistants, who are less experienced than you, should prosecute this case.

"MR. POWELL: It is not your prerogative to decide to waive any rights of the State.

"THE COURT: I think any right of the State ought to have justification. We are ready to proceed."

Whereupon twelve jurors were placed in the box after which the judge apologized for "any show of temperament." The District Attorney then apologized and commenced his voir dire examination.

█ The defendant urges that these remarks were prejudicial to his right to a fair and impartial trial. With this contention we cannot agree. This Court has held on previous occasions that it is incumbent upon the defendant to show, in such instances, how the particular remarks served to prejudice the defendant. See, *Saulsbury v. State*, 83 Okl.Cr. 7, 172 P.2d 440 (1946), and *Kelley v. State*, 31 Okl.Cr. 51, 236 P. 915 (1925). In the instant case we find the unfortunate exchange between the prosecution and trial court was in no way prejudicial to the defendant. Defendant's first assignment of error is without merit.

For his second assignment of error the defendant complains that the court erred when it failed to declare a mistrial after the witness Smith gave testimony not responsive to a question which amounted to an "evidentiary harpoon."

The question and answer complained of are as follows:

"Q. What is the Miranda Warning?
"A. This is his civil rights more or less.
"Q. Did you read them to him from a card?
"A. Yes, sir, always.
"Q. Did you have any discussion with him after advising him of his rights?
"A. As I started to advise him of his rights, then, he advised, look, man, I have heard these before, you don't have to read them to me, again. I went ahead and advised him of his rights. Then, he was handcuffed, after I advised him of his rights, I asked him who Mr. Lunsford was, where he was at—" (Tr. 11–12).

█ Defendant asserts that this was an "evidentiary harpoon" which prejudiced the rights of the defendant by tending to show that the defendant had been arrested on other occasions. In support of his argument the defendant cites *Duncan v. State*, 89 Okl.Cr. 325, 207 P.2d 324 (1949), in which this Court held:

"A peace officer, while on a witness stand, may not make voluntary statements designed to prejudice rights of a defendant on trial."

While we hold that the answer was not responsive, to the question, we do not think that it rises to the point of prejudicing the defendant's right to a fair and impartial trial.

The testimony of the arresting officer falls considerably short of amounting to an "evidentiary harpoon." At most it only tends to establish that the defendant was aware of his Constitutional rights, which every citizen can ascertain by lawful means. This assignment of error is also without merit.

█ For his final assignment of error the defendant alleges that the punishment was excessive considering the facts and circumstances. We would simply note that an examination of the record shows that the

defendant was given one-half of the maximum for the offense charged. This Court has long held that unless the punishment is such as to shock the conscience of this Court, we will not and cannot modify or reverse the same. *Severs v. State*, Okl.Cr., 477 P.2d 695 (1970).

Finding nothing in the record to justify reversal or modification in this case, the judgment and sentence is *AFFIRMED*.

BRETT, J., concurs.